The STATE of Texas, Appellant,

v.

Andre ZENO, Appellee.

No. 09–01–039 CR.

Court of Appeals of Texas, Beaumont.

Submitted April 30, 2001.

Decided May 9, 2001.

Tom Maness, Dist. Atty., Wayln G. Thompson, Asst. Dist. Atty., Beaumont, for state.

Bruce N. Smith, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

WALKER, Chief Justice.

The State appeals the trial court's decision to grant appellee's motion to suppress. The record before us reflects a hearing was held on appellee's motion with testimony elicited from the two key law enforcement officers involved as well as from appellee. At the conclusion of the hearing, the trial court requested the parties provide authority for their respective positions and postponed ruling on the merits until a later date. When the court reconvened for arguments, it is apparent that the parties had focused on a case recently decided by this Court, *Trahan v. State*, 16 S.W.3d 146 (Tex.App.—Beaumont 2000, no pet.). Following argument, the trial court took the case under advisement and later issued its ruling granting the motion to suppress.

██ In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim. App.1999). In reviewing the trial court's decision, an appellate court views the evidence in the light most favorable to the trial court's ruling. *Id.; Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The reviewing court may not disturb supported findings of fact absent an abuse of discretion. *State v.. Ballard*, 987 S.W.2d at 891. Consequently, this Court will only address the question of whether the trial

court properly applied the law to the facts. *Id.*

■ In the instant case, the trial court's order contained a detailed explanation for its ruling. The trial court's entire legal focus was on its interpretation of *Trahan.* It does not appear that credibility was a determining factor in the trial court's ruling.[1] Indeed, the trial court appears to have fully believed the testimony of the two officers in their description of the events as they unfolded. We reproduce portions of the trial court's order setting out the testimony it relied on in making its ruling:

> The key testimony in the present case comes from Officer Anderson who stated; "Yes, sir. He was an observer on this operation and notified my partner and I, Robert Ener, (sic) by radio that he observed a vehicle that had exited the freeway without signaling—not signaling a lane change to exit the freeway. Once he got to the yield sign there at the service road, he failed to signal a left turn and continued on to the service road east bound towards our location which was over there by Gulfco, another portion of the service road." Record, Page 7, Lines 14–22.

> Officer Anderson also testified; "Q. So what is your exact reason for stopping it? A. Number one, Officer Colander advised us that it failed to signal when it left the freeway when it changed lanes from here to the exit road, and number two, he didn't use a turn signal when it left this road—this roadway on to the service road (indicating)." Record, Page 22, Lines 10–15.

> Officer Colander testified: "He went from the right—he was in the right—

east bound lane—the outside lane and he changed lanes into the exit lane to get off the Interstate. He pulled up to the yield sign and turned east on the feeder road and then when he turned east, he also didn't signal then either when he got to the feeder road." Record, Page 44, Lines 23–25; Page 45, Lines 1–3.

The trial court then applied its interpretation of *Trahan* to the facts just quoted in the following manner:

> According to *Trahan,* there is no legal requirement to give a signal before making a freeway exit or when approaching a yield sign. The only violation is to make these movements in an unsafe manner. There is no evidence in this record that the defendant's actions were unsafe and thus, no legal right to stop the defendant existed.

In *Trahan,* we set out certain portions of the Texas Transportation Code applicable to the circumstances presented. As these same portions apply to the instant case, we quote the following from *Trahan:*

> Section 545.104(a) provides "[a]n operator shall use the signal . . . to indicate an intention to turn, change lanes, or start from a parked position." TEX. TRANSP. CODE ANN. § 545.104(a) (Vernon 1999). Section 545.103 provides "[a]n operator may not . . . otherwise turn the vehicle from a direct course, or move right or left on a roadway unless movement can be made safely." TEX. TRANSP. CODE ANN. § 545.103 (Vernon 1999).

*Trahan,* 16 S.W.3d at 147. In *Trahan,* the State took the position that a failure to give a turn signal, in and of itself, is a traffic offense for which a valid stop may

---

1. The question of law turned on reasonable suspicion for the stop of appellee's vehicle. As was to be expected, the eyewitness-officer testified that appellee failed to signal as he exited the interstate, and also failed to signal a left turn onto the access road after exiting the interstate, while appellee stated that he did indeed signal on both occasions.

be made. *Id.* As we explained, the "plain language" of § 545.104(a) indicates that signals are indeed mandatory when *turning, changing lanes,* or *starting from a parked position. Id.* We see a significant distinction in the facts presented in *Trahan* and those specifically focused upon by the trial court in the instant case. In *Trahan,* we pointed out the following:

> However, in this case, there is *no evidence* Trahan "turned" or changed lanes in order to exit the freeway. Officer Danny Bucholz testified he stopped Trahan for failing to signal his exit from the freeway. The State argues the "process of exiting the freeway necessitates a turn by its very nature, as one cannot continue a straight path on a highway and suddenly find himself on an adjacent feeder road." *The State asks this court to assume facts not in evidence. There is simply no evidence that the exit taken by Trahan required a "turn."*

*Id.* [emphasis added]

In the instant case, regardless of whether appellee signaled when he exited the interstate, the evidence is clear that after exiting the interstate, appellee approached a yield sign which required him to make a ninety-degree turn to the left or to the right. We believe Officer Colander's testimony supports this fact in that portion set out in the trial court's order quoted above. We also have examined State's Exhibit 1, the diagram of the area appellee was traveling when the events in question took place. Clearly, the diagram indicates that when appellee approached the yield sign after exiting the interstate, he was required to make a ninety-degree turn, which he did to the left. He was, at that point, heading back east.

As we explicitly state in *Trahan:*

> The State contends it is not necessary that a turn consist of a ninety degree turn onto a cross street. *However, a ninety degree turn is exactly the type of turn contemplated by Subchapter C of the Transportation Code, titled "Turning and Signals for Stopping and Turning."* The "turns" discussed in Subchapter C are those "at intersection," TEX. TRANSP. CODE ANN. § 545.101 (Vernon 1999), and turns "to move in the opposite direction when approaching a curve or the crest of a grade." TEX. TRANSP. CODE ANN. § 545.102 (Vernon 1999).

*Id.* [emphasis added]

It is only *after* the above-quoted portion of *Trahan* do we engage in the discussion of "mov[ing] right or left on a roadway unless movement can be made safely." *Id.* However, in the instant case, we have abundant evidence providing that appellee failed to signal his ninety degree turn at the yield sign. The trial court makes no notation that it believed appellee's testimony that he did signal, nor does the trial court indicate that the officers' testimony was not credible on this vital fact. In fact, as we have indicated above, the trial court's order finds, as a matter of law, that, according to *Trahan,* "there is no legal requirement to give a signal before making a freeway exit *or when approaching a yield sign.*" [emphasis added]. As we have tried to indicate, *Trahan* contains no such holding. Indeed, *Trahan* holds just the opposite.

▪ Misapplication of the law to the facts of a particular case is a *per se* abuse of discretion. *State v. Ballard,* 987 S.W.2d at 893. Under proper application of *Trahan,* there was reasonable suspicion for the stop of appellee's vehicle on the access road. *See Hernandez v. State,* 983 S.W.2d 867, 869 (Tex.App.—Austin 1998, pet. ref'd). Appellee notes with approval a portion of the dissent in *Ehrhart v. State,* 9 S.W.3d 929, 931 (Tex.App.—Beaumont

2000, no pet.), which sets out the axiom that "the law requires a suppression ruling be *sustained* if it can be upheld on *any* valid theory *regardless* of whether the State argued it at trial or on appeal." [emphasis in original] However, when a trial court's suppression ruling is so carefully documented from both a factual and legal standpoint, and the specific ruling is *legally* unsupportable, we have no other choice but to reverse said ruling, and remand the case to the trial court for further proceedings.

REVERSED AND REMANDED.