

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1491-09

**WILTON LARRON MAHAFFEY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### HENDERSON COUNTY

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ., joined. KELLER, P.J., filed a dissenting opinion.

### OPINION

Is merging without using a signal a traffic violation under the Texas Transportation Code? More specifically, does a driver in Texas, who passes a traffic sign that states, "Lane Ends, Merge Left," and who merges left after the right lane ends–that is, where the broken dividing lines between the two lanes cease and the line dividing the right-hand lane from the shoulder angles inward–have to signal that merge? In this case, the court of appeals held that

such a movement is a "turn," which requires a signal under Texas Transportation Code Section 545.104.[1] We reverse the Tyler court's holding that appellant's merge was a turn that required a signal. We remand to that court for a determination of whether the merge was a lane change that required a signal.

## I.

### A.    Background Facts.

Appellant was traveling in the far right lane of State Highway 198, approaching the bridge dividing Gun Barrel City from Payne Springs. When his lane ended, Appellant was forced to merge left. Sergeant Billy Sparks stopped appellant for failing to signal the merge, which he considered a lane change. Appellant was ultimately arrested for DWI. He filed a motion to suppress, arguing that he was illegally stopped.

At the hearing on the motion to suppress, Sgt. Sparks testified that he was following appellant's car south on Highway 198, when both cars passed a "Lane Ends-Merge Left" sign. "Mr. Mahaffey's vehicle was traveling southbound in the outside lane, which would be the right-hand lane closest to the curb. As it approached the area just south of where he's at where that lane ends, he merged . . . to the left . . . without signaling that merge, the lane change." Sgt. Sparks said that the road, as it approaches the bridge over Cedar Creek Lake, goes from two lanes in each direction, to one in each direction. Sgt. Sparks turned on his overhead lights for a traffic stop based on the failure to signal a lane change as required by

---

[1] *Mahaffey v. State,* No. 12-08-00430-CR, 2009 Tex. App. LEXIS 6444 (Tex. App.—Tyler Aug. 19, 2009) (not designated for publication).

Texas Transportation Code Section 545.104(a), but he turned them off when appellant started across the bridge. "It's a common practice to keep people from actually stopping on the bridge. . . [W]e'll turn the lights off and wait until we get to the other side to turn them back on." As he followed appellant, Sgt. Sparks noticed appellant "almost striking the guardrail on the bridge" which "raised two or three concerns. . . . He could have been ill, sleepy, intoxicated. There could have been anything wrong at that point."

After both cars crossed the bridge, Sgt. Sparks re-initiated the traffic stop. Sgt. Sparks walked up to appellant, immediately noticing "slurred speech" and "a strong odor of alcohol" coming from inside the car. Appellant was arrested for DWI. On cross-examination, Sgt. Sparks explained that appellant's car never crossed over any lane dividers or markers. Nonetheless, he still considered the road to be two lanes after the lines ended, although he was not sure if it would be considered two lanes under the law. Sgt. Sparks agreed that appellant did exactly what the sign said. "Where he decided to switch over at was when he noticed he no longer was going to have a lane. . . . I interpret when he leaves from that right-hand lane, he's moving to the left lane regardless of how they merge together."

After listening to argument, the trial judge said that she wanted more briefing before ruling on whether the stop was justified by the failure to signal the merge. She said that she would reserve ruling on whether the stop was justified as a welfare check. Both parties filed letter briefs addressing the failure to signal. The defense attorney argued that the merge was not a lane change. He acknowledged that there was no Texas authority directly on point, but

relied on *Trahan v. State*.[2]  In *Trahan,* the Beaumont court held that the failure to signal an exit from a freeway did not violate Section 545.104 when there was no evidence that Trahan "turned" or changed lanes to exit.[3]  Defense counsel also distinguished *State v. Dewbre*,[4] an Idaho case factually similar to this one, in which the court held that a signal was required for a merge because the plain language of the Idaho statute explicitly required a signal for a movement right or left upon a highway.[5]  The State's letter brief noted that neither case was mandatory authority and both were of negligible persuasiveness because neither court ruled on "lane change" grounds.  The State maintained that simple logic dictates that the merge was a lane change: When the defendant's lane ended, he was still traveling, but in a different lane.

The trial court denied the motion to suppress and signed agreed findings of fact and conclusions of law:

> On September 27, 2006, the Defendant was stopped for a traffic violation under Section 545.104 of the Texas Transportation Code (§ 545.104. SIGNALING TURNS; USE OF TURN SIGNALS. (a) An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position.)

---

[2] 16 S.W.3d 146 (Tex. App.—Beaumont 2000, no pet.).

[3] *Id.* at 147.

[4] 991 P.2d 388 (Idaho Ct. App. 1999).

[5] Idaho Code § 49-808(1) provides, "No person shall turn a vehicle onto a highway or move a vehicle right or left upon a highway or merge onto or exit from a highway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal."

The Court finds that the defendant did not cross over lane markings but rather failed to use a turn signal after the lane markings ended as the two lanes merged into one. The Court finds that this conduct is a traffic violation as contemplated by Section 545.104(a) and as such the traffic stop was justified.

The Court finds that the sole valid basis for the traffic stop and detention of the Defendant was the violation of Section 545.104(a).[6]

The DWI was resolved with a plea bargain, and the trial court certified appellant's right to appeal the ruling on the motion to suppress.

**B.    The court of appeals decision: the merge was a "turn" that required a signal because it was a "move right or left on a roadway."**

The court of appeals posed the question as follows: "whether it was reasonable for Sparks to conclude that a traffic violation had been committed, even though Appellant's vehicle did not cross any lane dividing lines."[7] Noting that the plain language of Section 545.104(a) requires the driver to signal for a turn, the court focused its analysis on whether appellant's act of steering his vehicle from right to left as the two lanes merged constituted a turn.[8] The court consulted Section 545.103 for a definition of turn, and found that it did.

From our reading of the plain language of section 545.103, we conclude that the legislature intended the word "turn" to include a movement to either the right or the left on a roadway. Thus, Appellant's movement from right to left on a roadway amounts to a "turn" under chapter 545. As such, Appellant was

---

[6] At the plea hearing the prosecutor stated, "for the record," that he had reviewed the defense-written proposed findings of fact and conclusions of law and he was "in agreement with it, and I think I've tendered my signature to that and submitted it to the Court."

[7] *Mahaffey*, 2009 Tex. App. LEXIS 6444, *6.

[8] *Id.* at *7.

required to use a turn signal to indicate his intention to make this turn.[9]

The court rejected the Beaumont court's reasoning, in *Trahan v. State*,[10] that the Transportation Code does not equate moving right or left to a "turn," and relied on the El Paso case of *Krug v. State*,[11] and the Corpus Christi case of *Reha v. State*,[12] to hold that it does.[13]  The court of appeals concluded that, because this traffic offense was committed in

---

[9] *Id.* at *10-11 (citations omitted).

[10] 16 S.W.3d 146 (Tex. App.—Beaumont 2000, no pet.).

[11] 86 S.W.3d 764 (Tex. App.—El Paso 2002, pet. ref'd).

[12] 99 S.W.3d 373, 376 (Tex. App.—Corpus Christi 2003, no pet.).

[13] In *Trahan*, the Beaumont court of appeals held that an officer improperly stopped Trahan for failing to signal his exit from a freeway.  16 S.W.3d at 147.  The court noted that the plain language of Section 545.104(a) indicates that signals are mandatory when turning, changing lanes, or starting from a parked position.  Because there was no evidence that Trahan turned or changed lanes to exit the freeway, the court held there was no basis for the stop.  *Id.*  In response to the State's contention that it is not necessary that a turn consist of a ninety degree turn onto a cross street, the court said that

> a ninety degree turn is exactly the type of turn contemplated by Subchapter C of the Transportation Code, titled "Turning and Signals for Stopping and Turning." The "turns" discussed in Subchapter C are those "at intersection," [Section 545.101], and turns "to move in the opposite direction when approaching a curve or the crest of a grade."  [Section § 545.102].  [Section 545.103] provides that "an operator may not . . . otherwise turn the vehicle from a direct course, or move right or left on a roadway unless movement can be made safely."  *Thus, the code does not equate moving right or left to a "turn," and the only condition placed upon an operator for moving right or left is that the movement be made safely*. There is no evidence in the record that Trahan's exit from the freeway was unsafe.

*Id.* (emphasis added).  The El Paso and Corpus Christi courts of appeals held that a signal is required for any "turn," regardless of degree.  In *Krug,* the El Paso court upheld a stop based on Krug's failure to signal a turn from a public roadway into a private driveway because the plain language of Section 545.104 applies whenever the driver has an "intention to turn," and Section 545.103 specifically discusses "turning a vehicle to enter a private road."  *Krug*, 86 S.W.3d at 766-67.  In *Reha*, the Corpus Christi court upheld a stop based on Reha's failure to signal a "sixty-five to seventy degree" left-hand turn at an intersection; it remarked that, under the plain language of Section 545.104(a), a signal is required regardless of the degree of the turn.  *Reha*, 99

the presence of a peace officer, the traffic stop was lawful, and therefore the evidence of appellant's intoxication was not required to be suppressed.

We granted appellant's petition for review, which asks "whether the Court of Appeals improperly ruled that a movement from right to left on a roadway amounts to a 'turn' under chapter 545 of the Texas Transportation Code."

Statutory construction is a question of law; therefore our review is de novo.[14]

**II.**

A.      **The only issue before this Court is whether a "merge" is a turn under the Transportation Code.**

The anomaly of this case is that the disputed issue in the trial court was whether the merge was a lane change. Whether the merge was a "turn"–the focus of the court of appeals's opinion–was never considered by the trial judge. Sgt. Sparks said he pulled appellant over because he failed to signal a movement that Sparks thought was a lane change. The motion to suppress hearing focused solely on whether the merge was a lane change, as did the parties' post-hearing briefs. The trial court denied the motion to suppress, presumably finding that it was a lane change. But the trial court's findings and conclusions (agreed upon by the parties) did not expressly say that. The trial court concluded that the conduct was a traffic violation under Section 545.104(a).

---

S.W.3d at 376.

[14] *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009); *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008).

The State, perhaps because of the ambiguity of that ruling, switched gears on appeal and argued that the trial court's ruling was correct under the theory that "a movement right or left on a roadway is a turn." That switch was perfectly permissible because an appellate court will uphold the trial court's ruling if that ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case."[15] The State's new theory was the one applied by the court of appeals, and that is the only theory that is presently before us.

**B.      Statutory Interpretation.**

"When we interpret statutes . . . we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation."[16]  In doing so, "we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment."[17] We follow this principle because (1) "the text of the statute is the law;" (2) "the text is the only definitive evidence of what the legislators . . . had in mind when the statute was enacted into law;" and (3) "the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted."[18]  Therefore, "if the meaning of the statutory text . . . should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning."[19]

---

[15] *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

[16] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[17] *Id.*

[18] *Id.*

[19] *Id.*

There are two exceptions to this plain-meaning rule: (1) "where application of a statute's plain language would lead to absurd consequences";[20] and (2) where "the language is not plain but rather ambiguous."[21]  In those instances, a court may "consider, in arriving at a sensible interpretation, such *extra*textual factors as executive or administrative interpretations of the statute or legislative history."[22]

**C.      Under the plain language of Section 545.104 of the Texas Transportation Code, a movement left or right on a roadway that is neither a turn nor a lane change does not require a signal.**

The Transportation Code does not explicitly define the word "turn."  Section 545.104, titled "Signaling Turns; Use of Turn Signals," provides: "(a) An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position."  Section 545.103, titled "Safely Turning," provides "An operator may not turn the vehicle to enter a private road or driveway, otherwise turn the vehicle from a direct course, or move right or left on a roadway unless movement can be made safely."  We agree with appellant that the court of appeals erred in this case in ruling that the Legislature intended the word "turn" to include a "movement right or left on a roadway."  As appellant notes,

> Chapter 545.104(a)'s requirement that an operator shall use a signal to indicate an intention to "turn, change lanes, or start from a parked position" does not

---

[20] *Id.*

[21] *Id.*

[22] *Id.* at 785-86 (emphasis in original).

incorporate all movements to the "right or left on the roadway." . . . However, the Twelfth Court of Appeals failed to apply the plain meaning of the words in Chapter 545.104(a) and instead, in justifying the traffic stop, cited language from another section that was specifically excluded from Chapter 545.104(a).[23]

The language is plain, and unambiguous, and does not lead to an absurd result. Section 545.103 does not purport to define "turn".[24] None of the sub-sections in Subchapter C do. Statutory terms that are not legislatively defined are generally construed as common usage allows, but terms that have an acquired technical meaning are generally construed in their technical sense.[25] The word "turn" is not a legal term of art–it has no "acquired technical meaning." "Turn" has many dictionary meanings, but, in the context of driving, "turn" means to change directions–to turn the vehicle from a direct course of the roadway.[26] You either turn left, or you turn right out of the direct course or flow of normal traffic. Indeed, Section 545.103 suggests exactly that when it states that a driver may not "turn the vehicle

---

[23] Appellant's Brief at 3.

[24] And the only definition that can be gleaned from it excludes, rather than includes, a "move right or left on a roadway." Such a movement is something other than a turn because it comes after the all-encompassing phrase "otherwise turn the vehicle from a direct course." If the phrase, "move right or left on a roadway" means the same thing as "otherwise turn the vehicle from a direct course," then one of those phrases has no meaning and is statutorily redundant. But, in construing statutes, we must "assume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *Tapps v. State*, 294 S.W.3d 175, 178 (Tex. Crim. App. 2009); *Campbell v. State*, 49 S.W.3d 874, 876 (Tex. Crim. App. 2001) (citing *State v. Hardy,* 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)).

[25] *Ramos v. State*, 303 S.W.3d 302, 307 (Tex. Crim. App. 2009).

[26] *See People v. Hrlic*, 744 N.W.2d 221, 225 (Mich. Ct. App. 2007) ("the ordinary meaning of the phrase 'turning from a direct line' means to rotate one's vehicle to the extent that one leaves the line of automobiles in which one is traveling").

to enter a private road or driveway, or otherwise *turn from a direct course*" unless he can do so safely.[27]  Thus, if the road itself makes sharp switchback turns going up the mountain, the driver need not  signal these "turns" because he is simply following the "direct course" of the road and of the traffic on that winding road.  It is when he turns right or left out of the "direct course" of the road that he must signal his intention.

In keeping with this common usage reading, the courts of appeals have held that a signal was not required for an exit from a freeway that did not require any lane change,[28] but a signal was required for a ninety-degree turn controlled by a yield sign,[29] a "sixty-five to seventy degree" left turn at an intersection,[30] and a turn from a public roadway into a private driveway.[31]  Some courts have also held that a signal is required for a turn from a designated

---

[27] TEX. TRANS. CODE § 545.103 (emphasis added).

[28] *Trahan v. State*, 16 S.W.3d 146, 147 (Tex. App.—Beaumont 2000, no pet.).

[29] *State v. Zeno*, 44 S.W.3d 709, 712 (Tex. App.—Beaumont 2001, pet. ref'd) (reaffirming *Trahan*'s analysis of Transportation Code; holding statute applies to turn at ninety-degree intersection controlled by yield sign).  *See also Falco v. State*, No. 03-08-00206-CR, 2009 Tex. App. LEXIS 1010, *4-6 (Tex. App.—Austin Feb. 11, 2009, pet. ref'd) (not designated for publication) (declining invitation to jump into the *Trahan* fray because the evidence showed that Falco's turn was a ninety-degree turn: "The turn lane did not change the angle of the turn; it merely rounded the turn and bypassed the light to facilitate the flow of traffic.").

[30] *Reha v. State*, 99 S.W.3d 373, 376 (Tex. App.—Corpus Christi 2003, no pet.).

[31] *Krug v. State*, 86 S.W.3d 764 (Tex. App.—El Paso 2002, pet. ref'd).  A maneuver in the opposite direction does not require a signal.  *See State v. Ballman*, 157 S.W.3d 65, 70 (Tex. App.—Fort Worth 2004, pet. ref'd) (right turn from a private parking lot onto public street without using a turn signal did not violate Texas Transportation Code; code applies only to the operation of a vehicle on a "highway" (Section 542.001) and "highway" is defined as "the width between the boundary lines of a publicly maintained way any part of which is open to the public for vehicular traffic" (Section 541.302(5)).

turn lane.[32]

The State characterizes Section 545.104(a) as ambiguous.  It argues that consulting

Section 545.103 to discern the meaning of "turn" is necessary because a "reasonably well

informed person could understand 'turn' in Section 545.104(a) to mean a variety of

movements. . . ."[33]  In other words, because the statute is ambiguous, the Tyler court correctly

looked at the surrounding sections within Subchapter C.

> To appropriately understand "turn" in Section 545.104 of the Transportation
> Code the Court should look at the surrounding sections within Subchapter C.
> Transportation Code, Section 545.101 describes the turning movements a
> driver makes to the right or left to begin traveling on an intersecting roadway.
> Section 545.102 describes the turning movements a driver makes to move in
> the opposite direction on a roadway. Section 545.103 describes the turning
> movements a driver makes to begin travel on an intersecting private road or
> driveway, when changing course, and moving right or left on a roadway. Thus,

---

[32] *Wehring v. State*, 276 S.W.3d 666, 668 (Tex. App.—Texarkana 2008, no pet.) (Section 545.104 of the Texas Transportation Code requires driver to signal his or her intent to turn, even from a right-turn-only lane); *Butler v. State*, 300 S.W.3d 474, 480 (Tex. App.—Texarkana 2009, no. pet. h.) (the officer reasonably believed a violation was in progress when Butler failed to signal turn from designated turn lane).  See also *Diaz v. State*, No. 03-08-00523-CR, 2009 Tex. App. LEXIS 5694, *6 (Tex. App.—Austin July 23, 2009, no pet. h.) (not designated for publication) (holding, notwithstanding *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006), that under Section 545.104, Diaz's failure to signal when turning from a designated turn lane was a traffic violation).  In *Dixon* we upheld the trial court's grant of a motion to suppress the fruits of a traffic stop that was based on a failure to signal a turn from a designated turn lane.  *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006).  As pointed out by the Austin court, "the *Dixon* court did not determine that a turn signal is unnecessary when turning from a dedicated turn lane. Rather, the issue before the court was whether it was within the trial judge's discretion to decide whether to believe the arresting officer's assertion that he initiated the traffic stop for a traffic offense." *Diaz v. State*, 2009 Tex. App. LEXIS 5694, at *5.

[33] State's Brief at 6.

"turn" includes moving "right or left on a roadway."[34]

We agree with appellant that the Tyler court's holding in this case leads to an absurd result: a requirement that a driver must signal any movement that is not a perfectly straight trajectory. As appellant pointed out in oral argument, such a construction would mean that a driver has to signal a swerve for a turtle,[35] or, as the State conceded, this construction means that a driver pulling over for an ambulance to pass would also have to signal for 100 feet[36] before getting out of the way.[37]

---

[34] State's Brief at 6-7, *citing State v. Neesley*, 239 S.W.3d 780, 784 (Tex. Crim. App. 2007) (court looked to surrounding sections within the same subchapter of the Transportation Code to understand the limits on the undefined term "specimen").

The problem with *Trahan*, the State argues, is that the *Trahan* court defines "turn" by relying on sections 545.101 "Turning at Intersection," and 545.102 "Turning on Curve or Crest of Grade," but ignores Section 545.103. And, "No authority indicates the legislature intended this arbitrary exclusion." State's Brief at 7. But the *Trahan* court did not purport to define "turn." Its point was simply that exiting a freeway is not obviously a turn; a 90-degree turn at an intersection is. The court's wording may have been inartful, but it was dicta–unnecessary to its holding–that was simply responsive to the State's argument. See note [13], *supra*.

[35] Swerves and drifts–which would appear to be "movements right or left on a roadway"–are covered by TEX. TRANSP. CODE § 545.060, which provides that "(a) An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." Courts have held that a violation of Section 545.060 occurs only when a car fails to stay within its lane and such movement is not safe or is not made safely. *State v. Cerny*, 28 S.W.3d 796, 800 (Tex. App.—Corpus Christi 2000, no pet.); *State v. Tarvin*, 972 S.W.2d 910, 910-11 (Tex. App.—Waco 1998, pet. ref'd).

[36] TEX. TRANSP. CODE § 545.104(b) ("An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.").

[37] TEX. TRANSP. CODE § 545.156(a) requires drivers to yield to emergency vehicles using sirens and "immediately drive to a position parallel to and as close as possible to the right-hand edge or curb of the roadway clear of any intersection."

To the degree that the statute might be considered ambiguous, we defer to the administrative determination by the Texas Department of Public Safety that the Transportation Code requires a signal for only one type of merge–that of entering a freeway.[38]  The Texas Driver's Handbook[39] explains "in everyday language those laws and driving practices and procedures which you need most often when driving in Texas."  Under "Signaling," the handbook advises: "ALWAYS SIGNAL when you are going to: 1. Change lanes.  2. Make a turn.  3. Pull away from a parking space which is parallel to the curb.  4. Slow down or stop."[40]  "Lane change" is defined as a "lateral maneuver moving the vehicle from one lane to another using proper space management procedures."[41]  "Turn" is defined as a "vehicle maneuver to change direction to the left or right."[42]  Nowhere does the manual say that a driver must signal when a lane merges into another lane–save for the situation of

---

[38] *See Ex parte Dunlap*, 166 S.W.3d 268, 269 (Tex. Crim. App. 2005); *Tarrant Appraisal District v. Moore,* 845 S.W.2d 820, 823 (Tex. 1993) (construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute).  *See also United States v. Powell*, 929 F.2d 1190, 1193-1194 (7th Cir. 1991) (consulting administrative interpretation of Utah Code § 41-6-69 contained in the Utah Driver Handbook for guidance on whether a driver must signal when entering a highway; noting handbook does not instruct drivers to signal when entering freeways, either in its instructions concerning freeway driving or in a diagram showing procedures to be followed by motorists merging from an on-ramp onto a highway).

[39] The Handbook is online at <ftp://ftp.txdps.state.tx.us/forms/DLhandbook.pdf>.

[40] *Id.* at 6-1 (emphasis in original).  This provision begins with the following: "A good driver always lets others know if he is going to turn or stop.  Your signal helps others plan ahead. A surprise move often results in crashes.  Be alert–watch and give signals."  *Id.*

[41] *Id.* at A-5.

[42] *Id.* at A-9.

when a driver *enters* a freeway.  Under "Entering the Freeway," the handbook advises: "1. You must yield the right-of-way to vehicles already on the freeway.  2. Enter the speed change lane, stay to the right, signal left, and when the way is clear increase your speed so you can merge with the flow of traffic."[43]

The State also asserts that the court of appeals's reading of the Code is bolstered by applying *ejusdem generis*[44] to the former Code section–Section 68(a) of Article 6701d.  This is a useful endeavor, according to the State, because when the legislature codified former Section 68(a) of Article 6701d, it did not intend to make substantive changes.[45]  The prior statute read:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 65, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with safety.  Except under conditions set out in Section 24(a) no person shall so turn any vehicle without giving an appropriate signal in the manner

---

[43] *Id.* at 9-2.  Conversely, under "Leaving the Freeway," the handbook advises: "Move into the proper lane well in advance of the exit.  The greater the traffic the earlier you should move into the proper lane.  Exit signs are usually placed at least 1000 yards ahead of the exit turn-off.  Slow down on the speed change lane or exit ramp.  While exiting slow down even more, so that by the time you are off the freeway you are going within the slower speed limit.  Watch your speedometer until you become used to the slower speed." *Id.* at 9-4.  Under "Driving the Freeway," the handbook advises "Look twice before changing speed or lanes and always signal." *Id.* at 9-3.

[44] BLACK'S LAW DICTIONARY 544 (6th Ed. 1991) states, "Under 'ejusdem generis' canon of statutory construction, where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated."

[45] State's Brief at 9-10 (citing Senate Comm. on State Affairs, Bill Analysis, Tex. S.B. 971, 74th Leg., R.S, (1995)).

hereinafter provided.[46]

The State argues that, because the phrase "so turn" refers to "the particular turning movements listed immediately above," the phrase contemplates the inclusion of "turn a vehicle from a direct course" or "move right or left upon a roadway," within the meaning of the word "turn." According to the State, because no "substantive change" was intended when the statute was split into Sections 545.103 and 545.104(a), those "definitions" live on today–and both capture appellant's merge. Appellant responds, "Another interpretation of the creation of two separate sections . . . is that the legislature wanted to separate what types of actions were required to be done safely and what type of actions required a signal."[47] In any event, appellate courts are constrained to construe a statute that has been amended as if it had been originally enacted in its amended form, mindful that the Legislature, by amending

---

[46] In the early 1970's, a signal was required only if other traffic could be affected by the movement. *See Hall v. State*, 488 S.W.2d 788 (Tex. Crim. App. 1973). The applicable statute then read: "No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 65, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement." *Id.* at 789 n.1. The *Hall* court held the traffic stop in that case was unlawful because there was "no showing that appellant's action of turning without giving an appropriate signal was under such circumstances as to be a threat or hazard to traffic safety or affecting the movement of other traffic as prohibited by Article 6701(d), Sec. 68(a)." *Id.* at 789. Some eighteen states still have such language in their signaling statutes. *See, e.g.*, A.R.S. § 28-754 (Arizona); A.C.A. § 27-51-403 (Arkansas). Many states, like Idaho, have the "move right or left" language in their signaling statutes. *See, e.g.*, Ala.Code 1975 § 32-5A-133(a) (Alabama), 13 Alaska Admin. Code 02.215 (Alaska), R.R.S. Neb. § 60-6,161 (Nebraska), Utah Code Ann. § 41-6a-804 (Utah). The Idaho statute is unusual in that it expressly mentions "merge" in its signaling statute. Idaho Code § 49-808 (Idaho).

[47] Appellant's Brief at 6.

the statute, may have altered or clarified the meaning of earlier provisions.[48]  In *Getts v. State*,[49] we addressed an argument similar to the one the State makes in this case:

> The State argues that we should follow the Legislature's intent regardless of what it wrote.  But we interpret the Legislature's statutes, not its intentions.  We must give effect to the Legislature's change in the law regardless of whether the change was intended.  As the Supreme Court reminded us earlier this year, "if Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result."  The D.C. Circuit explains, "whatever degree of confidence about congressional purpose one derives from the legislative history, that purpose must find expression 'within the permissible limits of the language' before it can be given effect."[50]

Under the plain language of the Transportation Code, all movements right or left on the roadway must be made safely, but only some–turns, lane changes, or starts from a parked position–require a signal.[51]  No statute provides or suggests that a driver who follows the directions of a highway traffic sign stating "Lane Ends–Merge Left" is making a "turn" under the plain language of the Transportation Code.  We therefore reverse the contrary holding of the court of appeals.

---

[48] *Ramos v. State*, 303 S.W.3d 302, 307 (Tex. Crim. App. 2009).

[49] 155 S.W.3d 153 (Tex. Crim. App. 2005).

[50] *Id*. at 158 (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 542 (2004) and *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 495 (D.C. Cir. 2004), respectively).

[51] *See Coleman v. State*, 188 S.W.3d 708, 717 (Tex. App.—Tyler 2005, pet. ref'd) (Tex. Gov't Code § 311.021 requires courts to presume that "the entire statute is intended to be effective"; because only those lane changes that can be made safely are permitted, any construction limiting the signal requirement to unsafe lane changes would render the pertinent portion of Section 545.104(a) [statutory mandate to signal an intention to turn] a nullity.).

**III.**

The State argues, in the alternative, that this Court should affirm the lower court based upon appellant's actions amounting to a "lane change" under Section 545.104(a).  We did not grant review of that question.  Therefore, we reverse the judgment of the court of appeals and remand the case to the court of appeals for further proceedings consistent with this opinion.


Delivered: June 30, 2010

Publish