# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00722-CR

**Brad William Reinke, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. 105359, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING**

## O P I N I O N

Appellant Brad William Reinke's application for writ of habeas corpus raises an issue of first impression involving recent statutory amendments governing the long-term commitment of defendants who are found incompetent to stand trial. Specifically, the 2005 Legislature's article 46B.009(b)—now 46B.0095(a)—prohibits a defendant who is found incompetent to stand trial from being committed by the State to a mental hospital or other inpatient or residential facility for a period "that exceeds the maximum term provided by law for the offense for which the defendant was to be tried." *See* Act of May 23, 2005, 79th Leg., R.S., ch. 324, § 3, 2005 Tex. Gen. Laws 949 (amended 2007) (current version at Tex. Code Crim. Proc. Ann. art. 46B.0095(a) (West Supp. 2010)). Once this maximum period of commitment is reached, the State must institute civil commitment proceedings if it desires to further confine the defendant in the mental-health system. Tex. Code Crim. Proc. Ann. art. 46B.0095(b). The case before us raises the question of how

to calculate the maximum term under this statute when the defendant has prior convictions that could enhance his punishment—i.e., is the "maximum term" calculated as the time prescribed as punishment for the level of the indicted offense, or is the "maximum term" lengthened by punishment enhancements that could have been applied at trial based upon prior convictions? We conclude that the statute's plain language requires that the maximum term be based upon the offense for which the defendant was to be tried without regard to the enhanced punishment that the defendant might have received had a jury both found him guilty and found enhancement allegations to be true. As such, we reverse the trial court's denial of Reinke's request for habeas corpus relief and conclude that Reinke has reached the "maximum term provided by law for the offense for which he was to be tried." *See id*. art. 46B.0095(a)*.* Accordingly, Reinke may only be further confined in the State mental-health system, assuming he remains incompetent to stand trial, pursuant to civil commitment proceedings under article 46B.0095(b). *See id.* art. 46B.0095(b).

## BACKGROUND

Reinke has been confined, mostly in the State mental-health system, since the day in September of 1990 when he allegedly stabbed his father in the chest, abdomen, and left index finger with a knife. A grand jury indicted Reinke for the second-degree felony of attempted murder, which carries a punishment range of two to twenty years in prison. The indictment included an enhancement paragraph, noting that Reinke had two prior felony offenses that could be considered to enhance his punishment if he were convicted. If a jury found true either of the prior felonies alleged in the enhancement paragraph following a conviction under the instant indictment, Reinke

2

would be subject to imprisonment as if for a first-degree felony, with a punishment range of five to ninety-nine years or life.

Reinke's prosecution was halted because the district court found him incompetent to stand trial and committed him to a mental-health facility.[1]  In 2010, having been committed in the mental-health system due to continuing incompetence for twenty years, Reinke filed an application for writ of habeas corpus with the district court seeking relief from his mental-health facility commitment under article 46B.0095 of the code of criminal procedure.  *See id*. art. 46B.0095(a); *see also id.* art. 11.01 (West 2005) (explaining that writ of habeas corpus functions as remedy for restraint on person's liberty); *Queen v. State*, 212 S.W.3d 619, 623 (Tex. App.—Austin 2006, no pet.) (same).

In his application for writ of habeas corpus, Reinke argued that his commitment in the State mental-health system had become unlawful because it exceeded the "maximum term provided by law for the offense for which [he] was to be tried," i.e., the twenty-year statutory maximum amount of time prescribed for the second-degree felony offense for which he was indicted in 1990.  The State responded that Reinke has not completed the maximum term of commitment because the indictment sought punishment enhancements that, upon conviction, made Reinke eligible for the greater sentence of five to ninety-nine years or life.

---

[1]  A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or if he does not have a rational and factual understanding of the proceedings against him.  Tex. Code Crim. Proc. Ann. art. 46B.003(a) (West 2006); *Pitonyak v. State*, 253 S.W.3d 834, 855 (Tex. App.—Austin 2008, pet. ref'd).

Reinke was given a habeas corpus hearing before a criminal court magistrate during which the parties entered into the following written stipulation of facts:

1. Applicant is restrained of his liberty by the Travis County Sheriff in the Travis County Jail under a capias issued pursuant to charges of attempted murder in Travis County, Texas. Applicant has been in continuous custody since September 23, 1990, most of which has been served at a mental health facility while waiting to regain competency.

2. Defendant was arrested on September 23, 1990, for the offense of aggravated assault, alleged to have been committed on that date.

3. Defendant was subsequently indicted for the second-degree felony of attempted murder, which carries a punishment range of two years to twenty years in prison.

4. There is an enhancement paragraph in the indictment, alleging prior felony convictions for criminal mischief and burglary of a habitation, both on October 13, 1988, which convictions are alleged to have become final before the commission of the offense alleged in this cause.

5. If either of the prior felonies alleged were found to be true at trial, Applicant would be subject to imprisonment as a first-degree felony, five to ninety-nine years or life.

. . . .

7. Upon motion of counsel at the time of arrest, Defendant was examined and found incompetent to stand trial with further findings that he would not regain competency in the near future.

8. Defendant has remained in continuous custody in a mental health facility since the date of arrest and has been found to be incompetent with the further findings that he will not regain competency in the near future.

. . . .

At the conclusion of the hearing, the magistrate interpreted article 46B.0095(a)'s phrase "maximum term provided by law for the offense for which the defendant was to be tried" to

4

include the term that may have resulted from punishment enhancements, ruling that it means "the maximum punishment to which the individual defendant is exposed in the event that all of the allegations in the indictment are found to be true." On the magistrate's recommendation, the district court then issued the order denying the application for habeas corpus that Reinke challenges in this appeal.

## ANALYSIS

In his sole issue, Reinke argues that the district court erred in denying his application for habeas corpus and that he must either be released or held under civil commitment proceedings[2] because he has been committed to a mental-health facility for longer than the maximum amount of time for the 1990 offense for which he was to be tried. Based on the plain language of article 46B.0095, we agree.

**Standard of review**

A trial court's grant or denial of habeas corpus relief is ordinarily reviewed under an abuse of discretion standard. *See Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex. Crim. App. 1981). However, "an abuse of discretion review of trial court decisions is not necessarily appropriate in the context of the application of law to facts when the decision does not turn on the credibility or demeanor of witnesses." *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999); *Guzman*

---

[2] The parties do not dispute that Reinke is still incompetent to stand trial and is not likely to regain competency in the near future. Thus, while they cite the available options as release or further commitment, neither cites the third potential option that could arise on different facts under the commitment statutes—putting the defendant to trial pursuant to the indictment.

*v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The instant case does not turn on the credibility or demeanor of witnesses, as the parties have stipulated to the relevant facts, and the district court applied its interpretation of article 46B.0095 to those stipulated facts as a matter of law. Accordingly, our review is limited to the legal question of statutory construction.

Because statutory construction is a question of law, our review is de novo. *Spence v. State*, 325 S.W.3d 646, 650 (Tex. Crim. App. 2010). We focus on the literal text to determine the objective meaning of that text when it was enacted. *Id*.; *Mahaffey v. State*, 316 S.W.3d 633, 637 (Tex. Crim. App. 2010). We are guided by the text itself because "the text of the statute is the law," "the text is the only definitive evidence of what the legislators . . . had in mind when the statute was enacted into law," and "the [L]egislature is constitutionally entitled to expect that the judiciary will faithfully follow the specific text that was adopted." *Id*. (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). When the meaning of the statutory text should have been plain to the legislators who voted on it, we give effect to that plain meaning unless "application of a statute's plain language would lead to absurd consequences" or "the language is not plain but rather ambiguous." *Id*. We presume that each word in the statute has a purpose and that the words not defined in the statute are used in their ordinary and common sense. *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex. Crim. App. 2011); *see* Tex. Code Crim. Proc. Ann. art. 3.01 (West 2005) ("All words, phrases and terms used in this Code are to be taken and understood in their ususal acceptation in common language, except where specially defined."); *see also* Tex. Gov't Code Ann. §§ 311.002 (addressing applicability of Code Construction Act), .011(a) (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and

6

common usage."). With these principles in mind, we turn to an application of article 46B.0095 to the facts before us.

**"Maximum term" under article 46B.0095**

The instant case turns upon the construction of Texas Code of Criminal Procedure article 46B.0095, which states in relevant part:

(a) A defendant may not, under this chapter, be committed to a mental hospital or other inpatient or residential facility, ordered to participate in an outpatient treatment program, or subjected to both inpatient and outpatient treatment for a cumulative period that exceeds the *maximum term provided by law for the offense for which the defendant was to be tried . . . .*

(b) On expiration of the maximum restoration period under Subsection (a), the defendant may be confined for an additional period in a mental hospital or other inpatient or residential facility or ordered to participate for an additional period in an outpatient treatment program, as appropriate, only pursuant to civil commitment proceedings.

Tex. Code Crim. Proc. Ann. art. 46B.0095 (emphasis added). Specifically, the question we must answer is whether the "maximum term" language refers to the sentence specified for the offense itself, without additional time incorporated for enhancements, or the total length of punishment that the defendant might have received, including enhancements. The parties' arguments on appeal mirror their arguments below. Both parties contend that the statute is unambiguous, and both assert that its plain language supports their respective interpretations.

Reinke contends that "maximum term" as used in article 46B.0095(a) means the maximum sentence for the indicted offense. Thus, he argues, the maximum amount of time for which he could be committed lawfully—absent a civil commitment proceeding—is twenty years,

7

the statutory maximum amount of time available for the second-degree felony of attempted murder. *See id*. art. 46B.0095(a); *see also* Tex. Penal Code Ann. §§ 12.33(a) (West Supp. 2010) (setting punishment range for second-degree felony at two to twenty years); 15.01(a), (d) (defining criminal attempt and classifying it as one category below offense attempted); 19.02(b), (c) (West 2003) (defining offense of murder and classifying it generally as first-degree felony). In support of his interpretation, Reinke points out that article 46B.0095 is directed at the "offense" to be tried and that punishment enhancements, applicable only after a determination of guilt, are not components of the "offense." Having been committed to a mental-health facility for more than twenty years for a second-degree felony offense, Reinke asserts that he is entitled to habeas relief. Because Reinke is incompetent to stand trial and is not expected to regain competency in the near future, he argues that the State must either release him or have him civilly committed pursuant to article 46B.0095(b).

The State contends that "maximum term" means the maximum amount of time for the offense tried, including any enhancements to punishment. Thus, the State argues, the maximum amount of time that Reinke could be committed lawfully—absent a civil commitment proceeding—is ninety-nine years or life, the maximum possible total sentence that Reinke could have received at trial for the indicted second-degree felony offense of attempted murder, increased by the punishment enhancements sought in the indictment. *See* Tex. Code Crim. Proc. Ann. art. 46B.0095(a); *see also* Tex. Penal Code Ann. §§ 12.42(b) (authorizing punishment enhancement for repeat felony offenders: "[I]f it is shown on the trial of a second-degree felony that the defendant has been once before convicted of a felony, on conviction he shall be punished for a first-degree felony."), .32(a) (West Supp. 2010) (setting punishment range for first-degree felony at

8

five to ninety-nine years or life); *Allen v. State*, 865 S.W.2d 472, 474 (Tex. Crim. App. 1993) ("Once a finding of true as to the enhancement paragraphs has been made, the 'punishment is absolutely fixed' by law.") (quoting *Harvey v. State*, 611 S.W. 2d 108, 111 (Tex. Crim. App. 1981)). The State asserts that the district court properly denied Reinke's requested habeas relief because he has not been committed to a mental-health facility for more than ninety-nine years or life. In support of its interpretation, the State argues that calculation of the "maximum term provided by law for the offense for which the defendant was to be tried" necessarily includes the enhancements because the verdict must include the results of both the guilt/innocence phase and the punishment phase of a trial. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(c) (West Supp. 2010) (specifying that jury's verdict of guilt is incomplete until "verdict has been rendered on both the guilt or innocence of the defendant and the amount of punishment"). Under the State's interpretation of "maximum term," article 46B.0095(a) would encompass the punishment range for the offense itself plus any punishment enhancement that the jury might find true under the relevant statutes.

Texas cases have not addressed the application of article 46B.0095 in the face of an offense enhanced by prior felonies. Considering this matter of first impression, we disagree with the State's argument that the maximum term of commitment under article 46B.0095(a) goes beyond the maximum term for the indicted offense to include increased time for punishment enhancements. Such an interpretation would be contrary to the statute's plain language, which correlates calculation of an accused's "maximum term" of commitment not to the total potential punishment, but to the indicted offense:

9

(a) A defendant may not, under this chapter, be committed to a mental hospital . . .
for a cumulative period that exceeds the *maximum term provided by law for the
offense for which the defendant was to be tried* . . . .

*Id.* art. 46B.0095(a) (emphasis added). The legal limit ("maximum term provided by law") is

modified by the phrase "for the offense for which the defendant was to be tried." Presuming as

we must that each word in the statute has a purpose, we conclude that the plain language of

article 46B.0095(a) prohibits commitment of an accused to a mental-health facility for a duration that

exceeds the maximum amount of time prescribed for the offense for which the accused was to

stand trial, not including time added for any enhancements that might serve to increase the ultimate

verdict on punishment.

A useful distinction between an "unenhanced offense" and an "enhanced punishment"

was illuminated recently, albeit in a different context, by the Texas Court of Criminal Appeals. In

*Ford v. State*, the Court analyzed statutory language in the code of criminal procedure and the

penal code to determine whether a defendant's prior conviction for the same crime increased the

level of his current offense, or merely the level of his punishment. 334 S.W.3d 230, 231, 234-35

(Tex. Crim. App. 2011) (noting similarities between enhancement provisions of article 62.102(c)

of code of criminal procedure and section 12.42 of penal code). The Court recognized that use of

the enhancement provisions from section 12.42 of the penal code increased the punishment range

applicable to the primary offense, but did not increase the severity level or grade of the offense itself.

*Id.* at 234-35 & n. 39 (citing *State v. Webb*, 12 S.W.3d 808, 811 & n.2 (Tex. Crim. App. 2000)).

The Court's conclusion that penal code section 12.42 enhances punishment—but

not the level of the offense—is significant here. The State cites subsection 12.42(b) to support its

10

contention that Reinke's maximum term of commitment under article 46B.0095(a) is the enhanced term of ninety-nine years or life.  *See* Tex. Penal Code Ann. §§ 12.42(b) (enhancing punishment from second-degree felony to first-degree felony if defendant had prior felony conviction), .32(a) (setting first-degree punishment range at five to ninety-nine years or life).  To adopt the State's position, we must disregard the holding of the Court of Criminal Appeals that enhancements under chapter 12.42 increase punishment, but not the offense level.  The State's position is also inconsistent with the well-established principle that prior offenses alleged to enhance punishment are not re-tried:  "'The prisoner is not tried over again for his first offense' . . . .  'A statement of a previous conviction does not charge an offense.  It is only the averment of a fact which may affect the punishment.'"  *Williams v. State*, 109 Tex. Crim. 450, 5 S.W.2d 514, 515 (1923) (internal citations omitted); *see Lewis v. State*, 154 Tex. Crim. 386, 227 S.W.2d 818, 819 (1950) (quoting *Williams* in discussion of purpose and effect of punishment-enhancement statutes).  The only "offense for which the defendant was to be tried" in this case was a second-degree felony that carried a statutory maximum punishment term of twenty years.

Accepting the State's interpretation of article 46B.0095(a) would require us to add language allowing consideration of possible enhancements to punishment and to omit the language limiting the maximum term to the offense to be tried.  But when—as here—a statute is clear and unambiguous, "the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute."  *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009) (quoting *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991)).  Because the Legislature did not express an intent to include punishment enhancements in article 46B.0095(a),

11

we conclude that calculation of the maximum term of mental-health care commitment before trial is not lengthened by punishment enhancements that may have served to increase the length of punishment had the defendant been convicted.

Our conclusion also comports with the plain meaning of the words used in article 46B.0095. If the Legislature intended punishment enhancements to be included in the calculation of a defendant's maximum term of mental-health care commitment before trial, the Legislature could have used language such as "maximum punishment," as it has done in other statutes. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 27.15 (West 2006) (allowing change of venue under certain circumstances for defendant who seeks to plead guilty or nolo contendere when he is "charged with a felony and the *maximum punishment* therefor shall not exceed fifteen years") (emphasis added); Tex. Water Code Ann. § 7.188 (West 2008) ("If it is shown at the trial of the defendant that the defendant has previously been convicted of the same offense under this subchapter, the *maximum punishment* is doubled with respect to both the fine and confinement . . . .") (emphasis added). Alternatively, if the Legislature intended to include punishment enhancements, it could have omitted "for the offense for which the defendant was to be tried" and simply ended subsection (a) with the phrase "maximum term provided by law."

**Maximum sentence in plea admonishments**

The State argues that its interpretation of article 46B.0095(a) aligns with the law addressing the maximum-possible-sentence admonishment that trial courts must give to defendants who plead guilty. *See* Tex. Code Crim. Proc. Ann. art. 26.13(a)(1) (West Supp. 2010) (requiring trial court to admonish defendant of punishment range "attached to the offense" before accepting

12

defendant's plea of guilty or nolo contendere); *Taylor v. State*, 591 S.W.2d 826, 828 (Tex. Crim. App. 1979) (holding that trial court erred by excluding enhancements from punishment-range admonishment); *Teamer v. State*, 557 S.W.2d 110, 112 (Tex. Crim. App. 1977) (concluding that trial court correctly included enhancement in punishment range when admonishing defendant). However, the State's reliance on plea-admonishment procedure in support of its interpretation is inapposite. The trial court's plea admonishments function to promote the validity of a guilty plea as a defendant's informed decision. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) ("A finding that a defendant was duly admonished creates a prima facie showing that a guilty plea was entered knowingly and voluntarily."). Plea admonishments are intended to give a defendant a full and realistic view of the worst-case-scenario maximum punishment that could result from a trial, not to increase or define the severity level of the defendant's offense. As such, plea-admonishment cases do not inform our decision here.[3]

## CONCLUSION

The plain language of article 46B.0095(a) of the Texas Code of Criminal Procedure limits commitment to the maximum term for the offense for which the defendant was to be tried. We conclude that the "maximum term" calculation does not include any potential punishment enhancements that the defendant may have received had a jury found him guilty and found punishment enhancements to be true. When that maximum term is reached, article 46B.0095(b)

---

[3] Federal cases interpreting language such as "maximum term authorized" or "maximum term of imprisonment" do not inform our decision either. *Cf. U.S. v. Rodriguez*, 553 U.S. 377, 381-82 (2008); *U.S. v. LaBonte*, 520 U.S. 751, 752-53 (1997).

provides that the defendant's commitment in the State mental-health system may be extended only through civil commitment proceedings. Tex. Code Crim. Proc. Ann. art. 46B.0095(b).[4] Such a conclusion follows the statutory scheme and the specific text adopted by the Legislature and considers the statute's words and phrases in context.

Accordingly, we sustain Reinke's sole issue. We reverse the district court's order denying habeas corpus relief and remand this case to the district court for further proceedings consistent with this opinion.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Remanded

Filed:   July 22, 2011

Publish

---

[4] Placement for the defendant's civil commitment, when criminal charges remain pending, must be a maximum-security unit of a mental-health facility when—as here—the indictment alleges an affirmative finding that the defendant used a deadly weapon in the commission of a felony offense. Tex. Code Crim. Proc. Ann. arts. 46B.104(2); 42.12 § 3g(a)(2) (West Supp. 2010).