IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0795-11



 


WILTON LARRON MAHAFFEY, Appellant


 

v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TWELFTH COURT OF APPEALS


HENDERSON COUNTY




 .

 Alcala, J., delivered the opinion of the Court, in which Meyers, Johnson,
Hervey, and Cochran, JJ., joined. Meyers, J., filed a concurring opinion. Keller,
P.J., filed a dissenting opinion, in which Price and Keasler, JJ., joined. Womack, J.,
dissented.


O P I N I O N 



 In this second petition for discretionary review filed by appellant, Wilton Larron
Mahaffey, we determine that the court of appeals erred by holding that a driver must signal
a lane change when his lane merges with another lane. (1) Mahaffey v. State, No. 12-08-00430-CR, 2010 Tex. App. LEXIS 8771 (Tex. App.--Tyler Nov. 3, 2010) (not designated for
publication), reh'g overruled, opinion withdrawn, substituted opinion at No. 12-08-00430-CR, 2011 Tex. App. LEXIS 1507 (Tex. App.--Tyler Mar. 2, 2011) (not designated for
publication). We reverse the judgment of the court of appeals. 

I. Background A. Facts 

 Appellant was traveling in the far right lane of State Highway 198, approaching the
bridge dividing Gun Barrel City from Payne Springs. (2) When his lane ended, appellant was
forced to merge left. Sergeant Billy Sparks stopped appellant for failing to signal the
maneuver. He ultimately arrested appellant for driving while intoxicated (DWI). Appellant
filed a motion to suppress, arguing that he was illegally stopped. At the hearing on the motion to suppress, Sergeant Sparks testified that he was
following appellant's car south on Highway 198, when both cars passed a "Lane Ends,
Merge Left" sign: "Mr. Mahaffey's vehicle was traveling southbound in the outside lane,
which would be the right-hand lane closest to the curb. As it approached the area just south
of where he's at where that lane ends, he merged . . . to the left . . . without signaling that
merge, the lane change." Sergeant Sparks said that the road, as it approaches the bridge over
Cedar Creek Lake, goes from two lanes in each direction, to one in each direction. Sergeant
Sparks turned on his overhead lights for a traffic stop based on the failure to signal a lane
change as required by Texas Transportation Code Section 545.104(a). See Tex. Transp.
Code § 545.104(a) ("An operator shall use the signal authorized by Section 545.106 to
indicate an intention to turn, change lanes, or start from a parked position."). After appellant
had pulled his car to the side of the road, Sergeant Sparks approached appellant's car and
immediately noticed appellant's "slurred speech" and "a strong odor of alcohol" coming from
inside the car. Sergeant Sparks arrested appellant for DWI. 

 On cross-examination, Sergeant Sparks explained that appellant's car never crossed
over any lane dividers or markers. Nonetheless, he still considered the road to be two lanes
after the lines ended, although he was not sure if it would be considered two lanes under the
law. (3) Sergeant Sparks agreed that appellant did exactly what the sign said: "Where he
decided to switch over at was when he noticed he no longer was going to have a lane. . . . I
interpret when he leaves from that right-hand lane, he's moving to the left lane regardless of
how they merge together."

 Defense counsel argued that the merge was not a lane change. He acknowledged that
there was no Texas authority directly on point, but relied on Trahan v. State. 16 S.W.3d 146
(Tex. App.--Beaumont 2000, no pet.). In Trahan, the Beaumont court of appeals held that
the failure to signal an exit from a freeway did not violate Section 545.104 when there was
no evidence that Trahan "turned" or changed lanes to exit. Id. at 147. Defense counsel also
distinguished State v. Dewbre, 991 P.2d 388 (Idaho Ct. App. 1999), an Idaho case factually
similar to this one, in which the court held that a signal was required for a merge because the
plain language of the Idaho statute explicitly required a signal for a movement right or left
upon a highway. (4) The State noted that neither case was mandatory authority and both were
of negligible persuasiveness because neither court ruled on "lane change" grounds. The State
maintained that simple logic dictates that the merge was a lane change: When the defendant's
lane ended, he was still traveling, but in a different lane.

 The trial court denied the motion to suppress and signed agreed findings of fact and
conclusions of law:

On September 27, 2006, the Defendant was stopped for a traffic violation under
Section 545.104 of the Texas Transportation Code. . . .

The Court finds that the defendant did not cross over lane markings but rather
failed to use a turn signal after the lane markings ended as the two lanes merged
into one. The Court finds that this conduct is a traffic violation as contemplated
by Section 545.104(a) and as such the traffic stop was justified.

The Court finds that the sole valid basis for the traffic stop and detention of the
Defendant was the violation of Section 545.104(a). (5) 


The DWI was resolved with a plea bargain, and the trial court certified appellant's right to
appeal the ruling on the motion to suppress.

 B. Procedural History 

 On appellant's first direct appeal challenging the trial court's denial of his motion, the
court of appeals affirmed the ruling, holding that appellant was required to signal because
his "movement from right to left on a roadway amounts to a 'turn' under chapter 545."
Mahaffey v. State, No. 12-08-00430-CR, 2009 Tex. App. LEXIS 6444, *11 (Tex. App.--
Tyler Aug. 19, 2009) (not designated for publication). On his first petition for discretionary
review, this Court addressed whether "a driver in Texas, who passes a traffic sign that states,
'Lane Ends, Merge Left,' and who merges left after the right lane ends--that is, where the
broken dividing lines between the two lanes cease and the line dividing the right-hand lane
from the shoulder angles inward--" is required to signal that maneuver under Texas
Transportation Code Section 545.104(a). Mahaffey v. State, 316 S.W.3d 633, 634 (Tex. Crim.
App. 2010) ("Mahaffey I"). We reversed the court of appeals, noting that the court's holding
"leads to an absurd result: a requirement that a driver must signal any movement that is not
a perfectly straight trajectory." Mahaffey I, 316 S.W.3d at 640. We instead concluded that
"[u]nder the plain language of the Transportation Code, all movements right or left on the
roadway must be made safely, but only some--turns, lane changes, or starts from a parked
position--require a signal." (6) Id. at 643. We held that the merge was not a turn and remanded
the case to the court of appeals to determine if the maneuver constituted a lane change under
the statute so as to require a signal. Id. 

 On remand, the court of appeals affirmed the trial court's ruling. Mahaffey, No. 12-08-00430-CR, 2011 Tex. App. LEXIS 1507. Finding the term "change lanes" unambiguous, (7)
the court held that the plain language of the statute encompassed appellant's conduct. Id. at
*9 n.2, *12. It concluded, 

When the right-hand lane ended, Appellant continued driving in the other
southbound lane, previously the lane to his left, that had not ended. To reach
that remaining lane, Appellant had to make a leftward lateral maneuver as he
departed that lane for another. Thus, it was reasonable for Sparks to conclude,
based upon the plain language of section 545.104(a), that Appellant committed
a traffic violation because he changed lanes and did not signal his intent to do 

so. (8)


 Id. at *12.

 In his second petition for discretionary review, appellant complains that the court of
appeals's holding conflicts with our holding in Mahaffey I. Appellant argues that his conduct
did not constitute a lane change under the signal statute because, in merging left when his
lane ended, he did not "change lanes," but rather "was simply following the 'direct course'
of the road." See Tex. Transp. Code § 545.104(a). He concludes that Sergeant Sparks's
interpretation of the signal statute, which was premised on where the officer believed the lane
ended, was an objectively unreasonable reading of the plain language of that provision. See
id.

 In response, the State contends that the ordinary meaning of "change" is "to make a
shift from one to another" and that "lane" means "a strip of roadway for a single line of
vehicles" and argues that appellant's lateral movement constituted shifting from one such
area of the roadway to another. It further contends that because the statute does not include
the term "marked" to modify "lanes," the fact that appellant did not pass over lane markings
is not outcome determinative. 

II. Analysis A. Standard of Review and Statutory-Construction Principles Because the historical facts are not disputed, and because statutory construction is a
question of law, we review the trial court's ruling on the motion to suppress de novo. See
Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999) (citing Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997)); Ramos v. State, 303 S.W.3d 302, 306 (Tex. Crim.
App. 2009).

 When interpreting statutes, courts must "seek to effectuate the 'collective' intent or
purpose of the legislators who enacted the legislation." Boykin v. State, 818 S.W.2d 782, 785
(Tex. Crim. App. 1991)). Toward that end, "we necessarily focus our attention on the literal
text of the statute in question and attempt to discern the fair, objective meaning of that text
at the time of its enactment." Id. However, where application of a statute's plain language
would lead to absurd consequences, or where "the language is not plain but rather
ambiguous," a court may consider "such extratextual factors as executive or administrative
interpretations of the statute or legislative history." Id. at 785-86. In this context, ambiguity
exists when a statute may be understood by reasonably well-informed persons in two or more
different senses; conversely, a statute is unambiguous where it reasonably permits no more
than one understanding. See State v. Neesley, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007). B. Plain Language of Statute Unambiguous

 In interpreting statutes, we presume that the Legislature intended for the entire
statutory scheme to be effective. See Tex. Gov't Code § 311.021(2); Murray v. State, 302
S.W.3d 874, 879, 881 (Tex. Crim. App. 2009) (in construing statute, looked to other
provisions within entire "statutory scheme" rather than merely the single, discrete provision
at issue). Texas Transportation Code Section 541.302(7) provides, "In this subtitle, (9) 'Laned
roadway' means a roadway that is divided into at least two clearly marked lanes for vehicular
travel." Tex. Transp. Code. § 541.302(7). The signal statute is contained within that subtitle
and is, therefore, subject to that definition. Id. § 545.104(a). 

 Here, the record reveals that the highway on which appellant was driving was
comprised of "clearly marked lanes for vehicular travel" and, therefore, was a "laned
roadway" as described in the definitions statute. See id. § 541.302(7). It logically follows
that once the clear markings on that highway terminated, so, too, did the corresponding
"lane." (10) We disagree with the State's contention that the termination of a lane does not
affect whether a driver changes lanes under the signal statute. See id. § 545.104(a). As a
practical matter, "changing lanes" requires the existence of more than one lane: In order to
change lanes from Lane A to Lane B, Lane A must exist. At the time appellant began driving
in Lane B, Lane A no longer existed; it had ended, and the roadway had merged into Lane
B. At that point, as appellant explains, "he made the only decision possible: to follow the
course of the roadway he was traveling on," all the while remaining in a single lane. 
Appellant did not change lanes. The two lanes became one. Because a signal is required only
to indicate an "intention to turn, change lanes, or start from a parked position," no signal is
required when two lanes become one. See id. § 545.104(a). As we concluded in Mahaffey I,
the language of the signal statute "is plain, and unambiguous, and does not lead to an absurd
result" in this case. Mahaffey I, 316 S.W.3d at 638 (citing Tex. Transp. Code § 545.104(a)).

 The State suggests that focusing on the absence of lane markings yields absurd results,
such as exempting from the signal statute lane changes made within intersections of
roadways, which do not contain lane markings. "[W]here application of a statute's plain
language would lead to absurd consequences that the Legislature could not possibly have
intended, we should not apply the language literally." Boykin, 818 S.W.2d at 785. Unlike this
case, in which the lane markings had ended, plainly denoting the termination of the lane, lane
markings do not terminate at intersections of laned roadways; rather, they are briefly
suspended immediately before the intersection and reappear immediately after the
intersection. We disagree that the absence of lane markings at an intersection creates the
same circumstances as the absence of markings when two lanes become one and conclude
that a plain reading of the signal statute does not yield an absurd result. (11)

 In support of its conclusion that the cessation of lane markings in this case was of no
legal consequence, the court of appeals cites Turner v. State, 261 S.W.3d 129, 133 (Tex.
App.--San Antonio 2008, no pet.), as "holding that [the] record supported [the] trial court's
findings that the appellant did not signal intent to change lanes even though the appellant's
vehicle did not cross lane dividing lines." Mahaffey, No. 12-08-00430-CR, 2011 Tex. App.
LEXIS 1507 at *12. In Turner, the appellant was stopped for failing to signal a right-hand
turn from one road onto another at an intersection. Turner, 261 S.W.3d at 131-32. The lane
from which he turned widened as it approached the intersection and was not exclusively used
for right turns; instead, a car traveling on that lane could continue traveling straight through
the intersection. Id. at 132. The court held that, because he was not turning from a designated
turn-only lane, the appellant was required to signal the turn under the signal statute. Id. at 133
(citing Tex. Transp. Code § 545.104(a)). But the court further concluded that even if that
part of the roadway was one from which only a right turn could be made, appellant would
still have been "required to signal to indicate his intention to move into that portion of the
roadway or 'lane.'" Id.

 Turner is distinguishable. Assuming, as did the Turner court, that the portion of the
roadway from which Turner turned did, in fact, permit only right turns (while the other
portion continued straight), a signal would have been required because the act of turning
from that road onto another would constitute a "turn" under the statute, despite that such a
turn would technically be the driver's only option. See Tex. Transp. Code § 545.104(a);
Mahaffey I, 316 S.W.3d at 637. We conclude that the court of appeals's reliance on Turner
was misplaced. 

III. Conclusion We hold that Sergeant Sparks failed to articulate specific facts that support a
reasonable suspicion that appellant had violated Texas Transportation Code Section
545.104(a). See Tex. Transp. Code § 545.104(a). We, therefore, hold that there was no
reasonable suspicion for the initial stop and that the trial court erred by failing to suppress
the evidence obtained as a result of the stop. We reverse the judgment of the court of appeals
and remand for proceedings consistent with this opinion.


Delivered: April 25, 2012

Publish
1. 
[1] Appellant's issue asks, "Did the Court of Appeals incorrectly decide the sole issue, in direct
conflict with the Texas Transportation Code and in direct conflict with the Court of Criminal
Appeals, in ruling that it was reasonable for the officer to believe that Appellant's merge amounted
to a 'lane change' that required a signal under chapter 545 of the Texas Transportation Code?"
2. We recite the facts in relevant part as set forth in Mahaffey v. State, 316 S.W.3d 633, 634-36 (Tex. Crim. App. 2010) ("Mahaffey I").
3. [3] The colloquy between defense counsel and Sergeant Sparks was as follows:

 Q: Where are the two lanes? How do you separate those? How does the Department of Transportation separate those as two lanes?

 A: The Department of Transportation would probably separate them where the 
 line stops.

 Q: [] Okay. So it's just your feeling that that's two lanes?

 A: Yes, sir.

 Q: Okay, and there is no law that you're aware of as to that effect, correct?

 A: Correct.
4. 
[4] Idaho Code § 49-808(1) provides, "No person shall turn a vehicle onto a highway or move
a vehicle right or left upon a highway or merge onto or exit from a highway unless and until the
movement can be made with reasonable safety nor without giving an appropriate signal." Compare
Tex. Transp. Code § 545.104(a) ("An operator shall use the signal authorized by Section 545.106
to indicate an intention to turn, change lanes, or start from a parked position.").
5. 
[5] Although not expressly stated in its findings and conclusions, the trial court implicitly
decided that the maneuver constituted a lane change under the statute. See Mahaffey I, 316 S.W.3d
at 637.
6. 
[6] We also concluded that, "[t]o the degree that the statute might be considered ambiguous, we
defer to the administrative determination by the Texas Department of Public Safety that the
Transportation Code requires a signal for only one type of merge--that of entering a freeway. . . .
Nowhere does the manual say that a driver must signal when a lane merges into another lane--save
for the situation of when a driver enters a freeway." Mahaffey I, 316 S.W.3d at 641. 
7. 
[7] The court also footnoted that, even if it had found the statute ambiguous, "neither the
Handbook's failure to specifically outline a driver's responsibilities in the situation before nor its
solitary reference in section 9-2 to a driver's responsibilities when one lane merges into another
would result in a different outcome." Mahaffey, No. 12-08-00430-CR, 2011 Tex. App. LEXIS 1507
at *9 n.2. 
8. The court of appeals found that "Sparks believed Appellant's failure to signal an intent to
turn prior to initiating his leftward merge was a violation of section 545.104(a)," and it identified the
issue as "whether it was reasonable for Sparks to conclude that a traffic violation had been
committed even though Appellant's vehicle did not cross any lane dividing lines." Mahaffey, No.
12-08-00430-CR, 2011 Tex. App. LEXIS 1507 at *7. Appellant has not challenged the court of
appeals's decision by claiming that the stop was unlawful but permissible due to the officer's
reasonable belief that a violation of law occurred. However, this Court has never addressed whether
an officer's reasonable interpretation of the law, if ultimately mistaken, can serve as an objectively
reasonable basis upon which to effectuate a stop. 

 In Madden v. State, we explained that the pertinent issue was "not whether appellant was
speeding," but whether the officer "had a reasonable belief that he was speeding. Even police officers
may be mistaken about an historical fact such as 'speeding,' as long as that mistake was not
unreasonable." 242 S.W.3d 504, 509 n.7 (Tex. Crim. App. 2007). Unlike Madden, here there is no
mistake about the historical facts. Rather, the matter before us is the application of the law to the
facts. See Garcia v. State, 43 S.W.3d 527, 531 (Tex. Crim. App. 2001) (addressing sufficiency of
facts to justify stop: "The question, then, is whether the child looking back several times is enough
to establish reasonable suspicion for a seat belt violation."). As the Second Court of Appeals has
explained, evidence that an officer "reasonably suspected that a defendant had violated a traffic law"
is constitutionally insufficient because to hold otherwise "would transform the Fourth Amendment's
objective standard into a subjective standard dependent on the whims of the police's 'understanding'
of the law." Fowler v. State 266 S.W.3d 498, 504 (Tex. App.--Forth Worth 2008, pet. ref'd).
9. 
[9] "Subtitle C. Rules of the Road." Tex. Transp. Code § 541.302(7).
10. 
[10] This is further evidenced by the sign reading, "Lane Ends, Merge Left," although the sign did
not specify at what point the lane ended. 
11. 
[11] We note that not every crossing of lane markings in a laned roadway will constitute a lane
change under the signal statute. See Hernandez v. State, 983 S.W.2d 867 (Tex. App.--Austin 1998,
pet. ref'd) (single, slight drift across markings not a lane change); Fowler, 266 S.W.3d 498 (same).
Our holding is limited to circumstances involving "laned roadways" and does not suggest that a
vehicle, in all circumstances, must cross lane markings in order to effectuate a lane change under the
statute. For roadways on which lanes are not clearly marked--for example, unpaved country roads
or freshly refurbished city streets--it may be more difficult to determine the existence and
boundaries of "lanes" for purposes of the signal statute. See Tex. Transp. Code § 545.104(a).