**Richard Wells FORSYTHE, Jr., Appellant,**

v.

**Richard L. PORTER, Appellee.**

**No. 12–85–0042–CV**

Court of Appeals of Texas, Tyler.

Jan. 30, 1986.

Rehearing Denied Feb. 27, 1986.

Sidney H. Davis, Jr., Touchstone, Bernays, Johnston, et al., Dallas, for appellant.

Scott A. Sanes, Harvill, Hardy & Milutin, Houston, for appellee.

COLLEY, Justice.

This is a personal injury suit arising out of a collision of vehicles operated by plaintiff/appellee Richard L. Porter and defendant/appellant Richard Wells Forsythe, Jr., occurring on August 30, 1978, at an uncontrolled intersection in the city of Dallas. The case was tried before a jury and the trial court rendered judgment in favor of Porter and his spouse on the verdict. We reverse the judgment and remand the cause.

The state of facts as shown by the evidence giving rise to the suit may be fairly summarized as follows:

During the early afternoon hours of August 30, 1978, Porter was westbound on

Merrill Road, and Forsythe was southbound on Denton Drive. Forsythe testified that he was driving at a speed of 40 m.p.h.[1] as he approached the intersection. He testified that he removed his foot from the accelerator and placed it on the brake slowing down his vehicle as he observed Porter's vehicle approaching the intersection from Merrill Road. He further testified that Porter's vehicle was slowing down to a speed of about 10 m.p.h., but when Forsythe neared the intersection Porter's vehicle was accelerated and entered the intersection at a speed of about 15 m.p.h. Forsythe testified that he immediately braked his vehicle when he observed Porter accelerate into the intersection. The physical evidence at the scene according to the testimony of M.T. Safford, a Dallas police officer who investigated the accident, disclosed that Forsythe's vehicle left braking "skid marks" of 45 feet in length before impact which occurred on the northern edge of the intersection. Safford gave testimony that in his opinion the Forsythe vehicle was travelling at a speed of between 40 and 45 m.p.h. immediately before he braked his vehicle. It is obvious from the documentary evidence that the time Porter entered the intersection that Forsythe's vehicle was at least 45 feet from the intersection and perhaps further away. Safford also testified that even if Forsythe's vehicle had been travelling at 30 or 35 m.p.h. he would have been unable to stop before striking the Porter vehicle if he had applied his brakes at the same time. The testimony shows without dispute that the collision occurred in the intersection in Forsythe's south bound lane of traffic on Denton Drive. Safford further testified that in his opinion the Porter vehicle entered the intersection first and had in fact, based on the post-accident scene, crossed the 11-foot north bound lane of Denton Drive before impact. The evidence shows without dispute that Porter had an unobstructed view of that portion of Denton Drive (to the north) in which Forsythe was travelling as Forsythe approached the intersection.

In its charge to the jury the trial court defined "right-of-way" in the following language:

At an intersection with no traffic control or signal, the driver of a vehicle approaching the intersection of a different street or roadway is required to stop, yield, and grant the privilege of immediate use of such intersection to any other vehicle which has entered the intersection from such driver's right or is approaching such intersection from such driver's right in such proximity as to be a hazard.

An approaching vehicle is a 'hazard' if a person using ordinary care would reasonably conclude that he could not enter or pass through the intersection without danger of collision.

You are further instructed that the driver of a vehicle which has entered the intersection has the right-of-way with respect to another vehicle approaching the intersection from a different highway, and when two vehicles enter an intersection at approximately the same time, the driver of the vehicle on the right has the right-of-way.

Thereafter the trial judge submitted three questions respecting the conduct of the parties. It is necessary to quote these issues and the jury's answers thereto, and they are as follows:

QUESTION 1

On the occasion in question, was Richard Wells Forsythe, Jr. negligent in his lookout, in his speed, in the application of his brakes, in failing to turn to the left before the occurrence in question, or with regard to right-of-way? Answer 'Yes' or 'No' on each line in Column 1. If any of the answers in Column 1 are "yes," was any such negligence a proximate cause of the occurrence in question? Answer 'Yes' or 'No' on the corresponding line of Column 2.

1. Posted speed limit at the location was 35 m.p.h.

|     |              | Column 1<br>Negligence | Column 2<br>Proximate Cause |
| --- | ------------ | ---------- | ---------------- |
| a.  | Lookout      | No         |                  |
| b.  | Speed        | Yes        | Yes              |
| c.  | Brakes       | No         |                  |
| d.  | Turn         | No         |                  |
| e.  | Right-of-Way | Yes        | Yes              |

### QUESTION 2

On the occasion in question, was Richard Porter negligent in his lookout, in his speed, in the application of his brakes, or with regard to right-of-way? Answer 'Yes' or 'No' on each line in Column 1. If any of the answers in Column 1 are "Yes," was any such negligence a proximate cause of the occurrence in question? Answer 'Yes' or 'No' on the corresponding line of Column 2.

|     |              | Column 1<br>Negligence | Column 2<br>Proximate Cause |
| --- | ------------ | ---------- | ---------------- |
| a.  | Lookout      | Yes        | Yes              |
| b.  | Speed        | No         |                  |
| c.  | Brakes       | No         |                  |
| d.  | Right-of-Way | Yes        | Yes              |

If any of your answers in Column 2 of Question 1 are "Yes," and if any of your answers in Column 2 of Question 2 are also "Yes," then answer Question 3; otherwise, do not answer Question 3.

In answer to the comparative negligence issue, the jury attributed seventy percent to Forsythe and thirty percent to Porter.

Forsythe urges twelve points of error, but because we are of the opinion that our decision on points, 1, 5, and 8 are dispositive of the appeal, we address only those points. Under these points, Forsythe claims the trial court committed reversible error in overruling his objections to the trial court's instructions regarding right-of-way, in refusing to submit his requested instructions and special issues on the law of right-of-way, and in refusing to instruct the jury on the doctrine of sudden emergency. Before the charge was submitted, Forsythe requested the court to give the following right-of-way instruction to the jury, to wit:

> At an intersection with no traffic control or signal, the driver of the vehicle approaching the intersection of a different street or highway is required to stop, yield, and grant the privilege of immediate use of such intersection to any other vehicle which has entered the intersection from such driver's right or is approaching such intersection from such driver's right in such proximity as to be a hazard.
>
> An approaching vehicle is a 'hazard' if a person using ordinary care would reasonably conclude that he could not enter or pass through the intersection without danger of collision.

The requested instructions were substantially correct under Article 6701d § 71(d)[2] in force at the time of the collision, but the trial court refused to so instruct the jury and overruled Forsythe's objections to the right-of-way instruction contained in the charge. By so doing, the trial court erred. Forsythe had a right to a correct submission of the right-of-way issues regarding the duty of Porter to initially yield the right-of-way to him as the vehicles were *approaching* the intersection.

Former TEX.REV.CIV.STAT.ANN. art. 6701d, § 71[3] before its amendment in 1969 by Acts of the 61st Leg. read in pertinent part:

> (a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.

---

2. TEX.REV.CIV.STAT.ANN. (Vernon 1977) which reads in pertinent part:

    (d) ... the driver of a vehicle approaching the intersection of a different street or roadway, not otherwise regulated herein, or controlled by traffic control signs or signals, shall stop, yield and grant the privilege of immediate use of such intersection to any other vehicle which has entered the intersection from such driver's right or is approaching such intersection from such driver's right in such proximity thereto as to consti-tute a hazard and after so stopping may only proceed thereafter when such driver may safely enter such intersection without interference or collision with traffic using such different street or roadway.

3. Uniform Act Regulating—Traffic on Highways, ch. 421, § 71, 1947 Tex.Gen.Laws 967, 980, amended by Act of May 16, 1969, ch. 793, § 1, 1969 Tex.Gen.Laws 2342, 2342–2343.

(b) When two (2) vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right. . . .

As is obvious, the 61st Legislature rewrote Section 71, consequently the third paragraph of the submitted instructions on right-of-way was an incorrect statement of the law as it was based on subsection (a) of former Article 71 which was, contrary to Porter's contentions, repealed by the Acts of the 61st Legislature. *Bryan v. Sundberg,* 5 Tex. 418 (1849). The third paragraph of the court's instruction conflicted with and in effect negated the instructions given to the jury in the first two paragraphs of the instruction given which correctly informed the jury that if it found that at the time Porter approached the intersection Forsythe's vehicle was so close as to present a hazard, then Porter had a duty to stop before entering the intersection. The erroneous instructions would tend to mislead a reasonable juror into the belief that although Porter initially was required to yield the right-of-way, he (Porter) could acquire the right-of-way by "beating" Forsythe to the intersection even though Forsythe's vehicle approaching from Porter's right then posed a clear danger of collision. The law does not permit this. On the other hand under the facts here, neither does the law permit Forsythe to exercise the right-of-way conferred upon him by Section 71(d) in disregard for the safety of Porter who as the evidence shows, and the jury found, initially failed to yield the right-of-way to Forsythe's vehicle in disobedience to Section 71(d). As Porter points out, our Supreme Court has definitively stated, "A statutory right-of-way rule is not absolute but relative, and is subject to the qualification that a person entitled to claim such right will exercise it with proper regard for the safety of himself and others." *McWilliams v. Muse,* 157 Tex. 109, 300 S.W.2d 643, 645 (1957); *see also Stanley v. Southern Pacific Company,* 466 S.W.2d 548, 553 (Tex.1971). In *McWilliams* the Supreme Court held that the evidence adduced before the court in a bench trial arising out of an intersection collision in which no findings of fact were requested or filed supported the trial court's implied finding that the defendant/respondent Muse should have discovered that plaintiff/petitioner McWilliams "might not stop and yield the right-of-way" in obedience to a stop sign at a time when Muse was at least 300 feet from the intersection, and that Muse failed to brake his vehicle at that point in time. The Supreme Court in reversing the judgment of the Court of Civil Appeals and affirming the trial court's judgment, stated that the trial judge under the facts before him was entitled to conclude that Muse failed to yield the right-of-way "when the exercise of ordinary care required him to do so, and that such failure was a proximate cause of the collision." *Id.,* 300 S.W.2d at 646. In *Stanley* the plaintiff was the widow of a passenger in an automobile who was killed in a collision of that vehicle and a freight train engine at a crossing. The train crossing was guarded by flashing red lights at the time of the collision, clearly requiring the driver of the automobile to stop before crossing the tracks. The trial court rendered judgment for the plaintiff based on the verdict of the jury finding the train engineer guilty of negligence in failing " 'to reduce the speed on the train . . . at the time when a person of ordinary prudent in the exercise of ordinary care would have reduced the speed of said train'; and . . . this was a proximate cause." Judge Greenhill, writing for the majority, states in substance that even a driver having the right-of-way must exercise ordinary care, and although he is not required "to anticipate the negligent conduct of others, a duty does arise when he anticipates or should anticipate that the other person's conduct is about to bring about a dangerous situation. The person having the right-of-way cannot exercise it with impunity." *Stanley,* 466 S.W.2d at 553. In support of these pronouncements, Judge Greenhill cites *McWilliams,* 300 S.W.2d at 643, and points out that a driver having the initial

right-of-way in an approach to an intersection has a duty to yield that right-of-way at a point in the time sequence of events when he realizes or, in the exercise of ordinary care, should realize that the other driver "'will probably disobey the law this time.'" *Stanley*, 466 S.W.2d at 553. Judge Greenhill places emphasis on the declaration of the court in *McWilliams*, 300 S.W.2d at 646, that the "exact time" when such duty arises is a fact issue. *Stanley*, 466 S.W.2d at 554. The doctrine of sudden emergency was not involved in either *McWilliams* or *Stanley*. Finally, we turn to a consideration of the refusal of the trial court to give Forsythe's requested sudden emergency instruction.[4] Porter argues that because "Forsythe was speeding by his own admissions," such instructions were inappropriate and not applicable. Such argument ignores the very purpose of the doctrine of sudden emergency. That purpose is, under appropriate facts, raising the issue, to "excuse conduct which otherwise would be negligence. It concerns the negligence issue...." *Yarborough v. Berner*, 467 S.W.2d 188, 191–192 (Tex.1971). The doctrine, when applicable, reduces "the legal standard of care which a party must exercise to the point where conduct which otherwise might be regarded [by the trier of the fact] as negligent ... is not so regarded." *Yarborough*, at 192. Its pure purpose is to inform the jury of the standards it should use in judging the facts before it. The testimony of both Forsythe and Safford raises the issue, and Forsythe was entitled to the instruction so that the jury could have correctly judged his conduct respecting both speed and right-of-way. We sustain points 1, 5, and 8 which present reversible error, i.e., the errors alluded to amount to a denial of Forsythe's rights, and in our opinion probably caused "the rendition of an improper judgment in the case." Tex.R.Civ.P. 434.

We do not address Forsythe's remaining points including points 3, 7, 11, and 12 by which he complains that the evidence is factually insufficient to support the findings that he was negligent in failing to yield the right-of-way, that his speed was a proximate cause of the collision, that the trial court erred in overruling his motion for new trial on the ground that the evidence was factually insufficient to support the jury's findings regarding future medical expenses of Porter, and finally that the damages awarded Porter were excessive.

The judgment is reversed and the cause is remanded for a new trial.

---

**4.** You are instructed that when a person is confronted with an emergency arising suddenly and unexpectedly, not proximately caused by any negligence on this part, and which to a reasonable person requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or a failure to use ordinary care, if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.