# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00241-CR

---

**The State of Texas, Appellant**

**v.**

**Jose Rolando Charles, Jr., Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY**
**NO. 2022CR0301, THE HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING**

---

## O P I N I O N

Following a traffic stop, appellee Jose Rolando Charles, Jr. was charged with driving while intoxicated (DWI), second offense, with a blood-alcohol-concentration level of 0.15 or more. *See* Tex. Penal Code §§ 49.04(a), (d), .09(a). He filed a pretrial motion to suppress evidence obtained during the stop and ensuing investigation. After conducting a hearing, the trial court granted the motion and entered findings of fact and conclusions of law. The State contends that the trial court abused its discretion by granting the motion because reasonable suspicion existed for the stop. Alternatively, the State contends that any taint from an illegal stop was attenuated or that the appeal should be abated and remanded for further findings of fact and conclusions of law. We reverse the trial court's order and remand for further proceedings consistent with this opinion.

**BACKGROUND**

Comal County Sheriff's Office Deputy James Jenkins was the State's only witness at the suppression hearing. His offense report and video from his dashboard- and body-cameras were admitted into evidence. He testified that while patrolling at approximately 2:50 a.m. on July 4, 2021, "after a lot of bars had closed," he observed a white Dodge that was "[s]werving within it[]s lane" and got behind the vehicle. As the Dodge approached an intersection, its driver "went to the far left lane—the turn only lane—and then decided to change his mind . . . and got over without signaling." After it cleared the intersection, the Dodge "was driving in two lanes" at once, and Jenkins "directed a traffic stop . . . [b]ased on the two violations [he] observed": the driver's changing lanes without signaling and driving in two lanes. Before turning on his emergency lights, Jenkins "c[a]me up behind [the Dodge] at a high rate of speed to close the distance."

Charles, the Dodge's driver, was "very apologetic" and stated that "he was all over the road," that he was coming from a dance hall in San Marcos, and that he had drunk two beers. Jenkins observed that Charles's speech was "delayed" and "a little bit slurred" and that his eyes were glassy. However, Jenkins did not recall smelling an alcoholic odor, and Charles did not swerve on the dash-cam video. Jenkins performed a series of standardized field sobriety tests and arrested Charles for DWI. A blood sample was seized from him pursuant to a warrant, and subsequent testing indicated that he was intoxicated.

After the hearing, the trial court granted Charles's motion to suppress and made the following findings of fact and conclusions of law:

**Findings of Fact**

. . . .

2.  The parties stipulated that it was a warrantless arrest.

3.  Deputy Jenkins'[s] testimony was contradictory with regard to the swerving and where it occurred. At the beginning, he testified that he pulled over the defendant for swerving within a single lane while on Hwy 46. Later, on cross examination, he changed his testimony that the swerving occurred on Loop 337.

4.  The video shows no swerving in a single lane by the Defendant on Hwy 46. There is no video of the Defendant driving on Loop 337. Given the contradictory testimony, I do not find the testimony that the Defendant swerved was credible.

5.  Deputy Jenkins admitted there was no swerving in a single lane by the Defendant on the video. This also contradicted his testimony that the swerving occurred on Hwy 46. Again, given the contradictory testimony and the video, I do not find the testimony that the Defendant swerved on Hwy 46 was credible.

6.  Deputy Jenkins['s] testimony regarding the Defendant driving in two lanes was not credible. The video shows the Defendant driving from the left turn lane into the far left [] lane after going through the green light. Defendant's right front tire briefly crossed into the center lane.

7.  Before the Defendant moved from the left turn lane through the light and into the far left lane, he momentarily waited for another vehicle to safely pass.

8.  After the vehicle passed, there were no other vehicles driving the same direction as the Defendant, with the exception of Deputy Jenkins, who remained behind the Defendant the entire time Defendant was driving.

9.  Deputy Jenkins testified swerving in a single lane, with nothing more, was not a violation of the law.

10. Other than the Deputy's testimony regarding the swerving, there were no other facts stated by the Deputy supporting reasonable suspicion for the stop.

. . . .

12. Deputy Jenkins'[s] testimony regarding reasonable suspicion existed simply because of the date and time of the incident was not credible.

3

**Conclusions of Law**

1. The Defendant's movement from the left turn lane to the left lane of Hwy 46 was made safely.

2. The Defendant waited for the one visible vehicle to pass before moving from the left turn lane on Hwy 46 to the left westbound lane on Hwy 46.

3. Deputy Jenkins'[s] statement that he had reasonable suspicion to pull the Defendant over after only seeing the Defendant swerving in a single lane on Loop 337 without it being a violation of the law was incorrect.

4. The Defendant's crossing from the left lane on Hwy 46 to the center lane on Hwy 46 was incidental.

5. Nothing the Defendant did before the stop was suspicious.

6. There was no objective justification on the part of the officer to make the stop.

7. The officer did not have specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that the Defendant had engaged in criminal activity.

8. The basis for granting the Motion to Suppress was that reasonable suspicion did not exist to stop the Defendant.

9. Common sense judgment and inferences about the Defendant's behavior – moving from the left turn lane to the westbound left lane of Hwy 46 – does not constitute reasonable suspicion. The lane change was not consistent with criminal activity.

The State appeals the trial court's order granting the motion.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion using a bifurcated standard. *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement, is arbitrary or unreasonable, or is without reference to any guiding rules or principles. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014); *State v. Mechler*,

4

153 S.W.3d 435, 439–40 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 378–79 (Tex. Crim. App. 1990)).  In a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018).  We therefore defer to a trial court's findings of fact that are supported by the record.  *Espinosa*, 666 S.W.3d at 667.  Likewise, we afford almost total deference to a trial court's rulings on mixed questions of law and fact if the resolution to those questions turns on the evaluation of credibility and demeanor.  *State v. Hardin*, 664 S.W.3d 867, 871–72 (Tex. Crim. App. 2022).  We review de novo legal questions, such as the construction of a statute, and mixed questions that do not turn on credibility and demeanor.  *Espinosa*, 666 S.W.3d at 667; *Hardin*, 664 S.W.3d at 872.  The evidence and all reasonable inferences are viewed in the light most favorable to the trial court's ruling, which must be upheld if it is reasonably supported by the record and is correct under a theory of law applicable to the case.  *Espinosa*, 666 S.W.3d at 667.

A deferential standard also applies when a trial court's findings of historical fact are based on a video's contents, over which there is a factual dispute.  *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012).  However, "indisputable video evidence" may be reviewed de novo, unless the trial court's findings concern "whether a witness actually saw what was depicted on a videotape."  *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013); *see Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) ("[T]he nature of the evidence presented in the videotape does not pivot 'on an evaluation of credibility and demeanor.'  Rather, the videotape presents indisputable visual evidence contradicting essential portions of [the officer's] testimony.  In these narrow circumstances, we cannot blind ourselves to the videotape

evidence simply because [the officer's] testimony may, by itself, be read to support the Court of Appeals' holding.").

"When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop at a suppression hearing." *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018). "An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) (citing *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014)). "'Reasonable suspicion' means 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. Crim. App. 2021) (quoting *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020)). It exists if an officer "has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity." *Cortez*, 543 S.W.3d at 204. "The articulable facts need only show that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Johnson*, 622 S.W.3d at 384. The detaining officer does not need to be able to pinpoint a particular penal infraction or establish that a defendant committed a crime. *Id.*; *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011); *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011); *see Guerra*, 432 S.W.3d at 912 ("It is not necessary that the reasonable suspicion relate to a specific criminal offense."). Reasonable suspicion requires only "'some minimal level of objective justification' for the stop," *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)): a level of suspicion more than a mere "hunch" but less than probable cause, *Johnson*, 622 S.W.3d at 384. The test

for reasonable suspicion looks at the totality of the circumstances and focuses "solely on whether an objective basis exists for the detention," disregarding the officer's subjective intent. *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013); *see State v. Elias*, 339 S.W.3d 667, 675 (Tex. Crim. App. 2011) ("[I]t does not matter whether the objective facts support a detention for the specific offense [the officer] intended to detain the appellee for as long as the facts otherwise objectively support a detention for *some offense*.").

## DISCUSSION

The State contends that the trial court abused its discretion by granting Charles's motion to suppress because Jenkins had reasonable suspicion to stop Charles for any of four offenses: failing to signal a lane change, *see* Tex. Transp. Code § 545.104(a); failing to comply with a traffic-control device,[1] *see id.* § 544.004(a); failing to stop at a steady red light, *see id.* § 544.007(d); and DWI, Tex. Penal Code § 49.04(a).[2] In particular, the State asserts that Jenkins developed reasonable suspicion to stop Charles for a violation of subsection 545.104(a), the signal statute, when Charles moved from the left-turn-only lane to the leftmost straight-only lane of Highway 46 as he crossed the intersection. In response, Charles argues that the movement did not constitute a lane change, that he moved into the intersection safely, and that the movement was necessary because "Deputy Jenkins approached his vehicle from behind at a high rate of speed."

---

[1] An "official traffic-control device" is a sign, signal, marking, or device used to regulate, warn, or guide traffic. *See* Tex. Transp. Code § 541.304(1).

[2] Because we conclude that Jenkins had reasonable suspicion to stop Charles for failing to signal a lane change, we need not address whether reasonable suspicion existed for the other offenses. *See* Tex. R. App. P. 47.1.

7

Subsection 545.104(a) of the Transportation Code provides that a vehicle "operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position." Tex. Transp. Code § 545.104(a); *see id.* § 545.106(a) (requiring operator to give turn signal by using hand and arm or lighting signal lamp); Tex. Gov't Code § 311.016(2) (providing that use of word "shall" in statute "imposes a duty"); *State v. Stephens*, 663 S.W.3d 45, 55 (Tex. Crim. App. 2021) ("Under the ordinary meaning of words, 'may' is permissive while 'shall' is mandatory."). A "laned roadway" is one "that is divided into at least two clearly marked lanes for vehicular travel," Tex. Transp. Code § 541.302(7), and the Court of Criminal Appeals has defined a "lane change" as a "lateral maneuver moving the vehicle from one lane to another using proper space management procedures," *Mahaffey v. State*, 316 S.W.3d 633, 641 (Tex. Crim. App. 2010) (*Mahaffey* I) (quoting Texas Department of Public Safety, *Texas Driver Handbook*, 71 (January 2022), available at https://www.dps.texas.gov/internetforms/forms/dl-7.pdf (last accessed on February 26, 2024)). However, not every crossing of lane markings constitutes a lane change under the signal statute, and a vehicle need not, in all circumstances, "cross lane markings in order to effectuate a lane change under the statute," *Mahaffey v. State*, 364 S.W.3d 908, 914 n.11 (Tex. Crim. App. 2012) (*Mahaffey* II).

In support of his argument that his movement in the intersection from the left-turn-only lane to the leftmost straight-only lane was not a "lane change," Charles cites the Court of Criminal Appeals' decision in *Mahaffey* I and asserts that "there are no 'lanes' in an intersection." *See* Tex. Transp. Code § 541.303(a) (defining "intersection" as "the common area at the junction of two highways, other than the junction of an alley and a highway"). We first note that both the facts and issue in *Mahaffey* I, which involved a determination of whether a

8

merge was a "turn" under the signal statute, are distinct from those in the present case. *See* 316 S.W.3d at 635, 637. The Court in *Mahaffey* I concluded only that the court of appeals had erred by ruling that the Legislature intended the word "turn" to include "movement right or left on a roadway." *Id.* at 638. Indeed, the Court expressly declined to address the question of whether Mahaffey's movement amounted to a "lane change." *Id.* at 643.

While the Court later addressed the "lane change" issue in *Mahaffey* II, dicta in that case support a reading of subsection 545.104(a) that requires drivers to signal a lane change in an intersection. *See* 364 S.W.3d at 913–14. The Court determined that Mahaffey had not been required to signal because he had not in fact changed lanes: "'changing lanes' requires the existence of more than one lane," and because his lane had ended—as evidenced by the cessation of lane markings—and merged into another lane, "[t]he two lanes became one." *Id.* at 913. Addressing the State's suggestion that focusing on the absence of lane markings would yield absurd results, such as "exempting from the signal statute lane changes made within intersections of roadways, which do not contain lane markings," the Court explained:

> "[W]here application of a statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, we should not apply the language literally." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Unlike this case, in which the lane markings had ended, plainly denoting the termination of the lane, lane markings do not terminate at intersections of laned roadways; rather, they are briefly suspended immediately before the intersection and reappear immediately after the intersection. We disagree that the absence of lane markings at an intersection creates the same circumstances as the absence of markings when two lanes become one and conclude that a plain reading of the signal statute does not yield an absurd result.

*Id.* at 913–14.

Although the question of whether Charles's lateral movement in the intersection was a "lane change" is one that we review de novo, we note that both the trial court and defense

9

counsel characterized the movement as such. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010) (stating that trial court's rulings on application of law to questions of fact and to mixed questions of law and fact are reviewed de novo if resolution of those questions does not depend on evaluation of credibility and demeanor). The trial court found that the video "shows [Charles] driving from the left turn lane into the far left [] lane after going through the green light" and concluded that "[t]he lane change was not consistent with criminal activity." Defense counsel questioned Jenkins regarding an explanation given by Charles's passenger "about why [Charles] changed lanes like he did"; asked Jenkins whether Charles "change[d] lanes within that intersection in safety"; and stated in closing argument, "[H]e gets in that left lane and he definitely makes sure it's clear and goes over. So did he fail to signal a lane change, if that's even required. I think the statute requires it to be done in safety and it was done in safety."

We conclude that Charles's movement from the left-turn-only lane to the leftmost straight-only lane of Highway 46 in the intersection was a "lane change" for purposes of the signal statute. *See, e.g.*, *City of Houston v. Green*, 672 S.W.3d 27, 29 (Tex. 2023) ("After safely crossing the first few lanes of the intersection, . . . Omesa collided with a vehicle driven by Crystal Green."); *Abraham v. State*, 330 S.W.3d 326, 331 (Tex. App.—Dallas 2009, pet. dism'd) ("[T]he vehicle remained stopped for a considerable amount of time in the center lane of an intersection of two public streets."); *Forsythe v. Porter*, 703 S.W.2d 836, 837 (Tex. App.—Tyler 1986, writ ref'd n.r.e.) ("The testimony shows without dispute that the collision occurred in the intersection in Forsythe's south bound lane of traffic on Denton Drive."); *see also Speck v. State*, 564 S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (concluding that "appellant changed lanes because he made a shift from one strip of roadway to another").

10

Charles next argues that Jenkins lacked reasonable suspicion to stop him for a violation of subsection 545.104(a) because his lane change was made safely.[3]  Although he is correct that "the Transportation Code does, in fact, contain a provision discussing the safe movements of vehicles from left to right," *see* Tex. Transp. Code § 545.103, to the extent that he contends that the safety statute acts to limit the application of subsection 545.104(a), we disagree.

Section 545.103 provides that "[a]n operator may not turn the vehicle to enter a private road or driveway, otherwise turn the vehicle from a direct course, or move right or left on a roadway unless movement can be made safely." *Id.*  Previously, the safety and signal statutes were combined in a single statute, which read:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 65, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with safety.  Except under conditions set out in Section 24(a) no person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.

*Mahaffey* I, 316 S.W.3d at 642; *see* Tex. Rev. Civ. Stat., art. 6701, § 68(a) (repealed 1995).

In *Mahaffey* I, the Court of Criminal Appeals rejected the State's argument that the Legislature, in splitting the statutes, did not intend to make any "substantive change." *See* 316 S.W.3d at 642.  The Court explained that regardless of legislative intent, "[u]nder the plain language of the Transportation Code, all movements right or left on the roadway must be made safely, but only some—turns, lane changes, or starts from a parked position—require a signal." *Id.*  In a footnote, the Court also cited approvingly *Coleman v. State*, which recognized that "any

---

[3] Charles elsewhere asserts that "it is true that [the signal statute does not] require the driver's action to be 'unsafe' to supply an officer with reasonable suspicion."

11

construction limiting the signal requirement to unsafe lane changes renders the pertinent portion of section 545.104(a) a nullity." 188 S.W.3d 708, 717 (Tex. App.—Tyler 2005, pet. ref'd); *see Krug v. State*, 86 S.W.3d 764, 767 (Tex. App.—El Paso 2002, pet. ref'd) (concluding that signal and safety statutes "are not mutually exclusive but are complementary," that "a driver has a duty to not only signal an intention to turn [but] must also make his turn safely," that "[t]hese two requirements serve different goals," and that court found "no intention on the part of the Legislature to render them mutually exclusive"). Consequently, the fact that Charles's lane change was performed safely did not deprive Jenkins of reasonable suspicion to believe that Charles had violated subsection 545.104(a).

Lastly, Charles argues that he "moved his vehicle from the left-hand turn lane into the intersection only after Deputy Jenkins approached his vehicle from behind at a high rate of speed" and that "requiring a driver to signal before moving out of the way of a rapidly approaching police car" is an absurd result that the Legislature could not have intended.

While the trial court did not make a factual finding regarding the speed at which Jenkins approached Charles's vehicle, the record contains indisputable video evidence contradicting Charles's assertion. *See Miller*, 393 S.W.3d at 263. Jenkins's dash-cam video shows that Jenkins followed Charles at a relatively constant rate of speed, maintaining a fair distance between their vehicles. When Charles moved into the left-turn-only lane, for which the suspended traffic signal was red, Jenkins did the same. As Charles approached the intersection, he slowed, tapped his brakes to allow a vehicle to pass in the middle lane of Highway 46, and moved into the leftmost straight-only lane. Jenkins likewise slowed at the intersection and came to a near stop at least one car-length behind Charles's vehicle before Charles began accelerating. Only after both vehicles had cleared the intersection did Jenkins activate his overhead lights. It

12

is apparent from the video that Jenkins's testimony at the suppression hearing that he "c[a]me up behind [Charles] at a high rate of speed to close the distance so [he] c[ould] turn [his] lights on" referred to his actions "right before [he] turn[ed] his lights on," after both he and Charles had cleared the intersection.

Regardless, the relevant inquiry is not whether Charles actually committed a traffic violation but whether Jenkins had a reasonable suspicion that a violation had occurred. *See Martinez*, 348 S.W.3d at 923. "The mere possibility that an act is justified will not negate reasonable suspicion." *Jaganathan*, 479 S.W.3d at 248; *see State v. Colby*, 604 S.W.3d 232, 238 (Tex. App.—Austin 2020, no pet.). As the Court of Criminal Appeals has explained:

> Sometimes it will be obvious that otherwise illegal conduct is justified by surrounding circumstances. But a defense would matter only if the facts establishing it were so obvious that an objective officer viewing the situation would be unreasonable in failing to realize that the person's conduct was allowed by law. A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct. The reasonable suspicion standard accepts the risk that officers may stop innocent people.

*Jaganathan*, 479 S.W.3d at 248 (internal quotation marks omitted). From the record before us, we conclude that Jenkins had reasonable suspicion to stop Charles and that it was not so obvious that Charles's conduct was justified as to negate this reasonable suspicion.

Because Jenkins had reasonable suspicion for the traffic stop, the trial court abused its discretion by granting Charles's motion to suppress. We sustain the State's issue.[4]

---

[4] Accordingly, we will not consider the State's alternative grounds for reversal or abatement. *See* Tex. R. App. P. 47.1.

13

**CONCLUSION**

Having sustained the State's issue on appeal, we reverse the trial court's order granting Charles's motion to suppress and remand the case for further proceedings.[5]

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Reversed and Remanded

Filed: February 29, 2024

---

[5] In addition, all pending motions are dismissed as moot.